489 So.2d 1018 (1986)
Irene ROY
v.
Whybra J. LANDRY.
No. CA 85 0266.
Court of Appeal of Louisiana, First Circuit.
May 28, 1986.
Craig L. Kaster, Baton Rouge, for Irene Roy, appellant.
John A. Lieux, Gonzales, for Whybra Landry, appellee.
Before EDWARDS, LANIER and JOHN S. COVINGTON, JJ.
JOHN S. COVINGTON, Judge.
Plaintiff devolutively appealed the district court judgment, read, rendered and signed on October 26, 1984, dismissing her suit for partition of community property.
Irene Schwartz and Whybra J. Landry were married on June 12, 1947; in 1976 Irene filed two suits for separation from bed and board; after the first suit was filed she and Mr. Landry reconciled but she filed the second suit on July 13, 1976. On July 30, 1976, the matter was heard in the nature of a confirmation, the defendant husband having filed an answer; defendant's attorney was present at the July 30 hearing but defendant was not. At the conclusion of the hearing the court rendered judgment in favor of Irene; the formal judgment was not read and signed until February 24, 1978.
Both parties testified that after trial of the separation suit was concluded they met at their married daughter's home and Mr. Landry prepared an uncounselled, hand printed document styled "Seperation (sic) of Property Belonging to Irene S. Landry *1019 & W.J. Landry" which listed various items of movable property being divided. Some of the items and all values were printed with a blue ink ballpoint pen; other items and the subject headings were printed with black ink ballpoint pen. Plaintiff, defendant, and their son-in-law signed the undated sheet of paper at the bottom.
The "separation of property" instrument contains one item which is at the center of this controversy, listed as "Kaiser Retirement Plan" followed by the figure "1762.00"; that item was placed in the "W.J. Landry" column. Irene's column and Mr. Landry's column each totalled "17086.00." Both testified that it was their intention to completely divide the community effects on an equal basis and Mr. Landry's defense is that they did just that. Irene testified that she was mislead by Mr. Landry into believing the Kaiser Retirement Plan was worth only $1,762 when, in fact, it was worth much more and, for that reason, she sought a supplemental partition of the true value of the retirement plan.
Robert Hlebak, Kaiser Aluminum's employee in charge of Kaiser's salaried employee's retirement plan at its Gramercy facility, testified that annual statements are sent to each participant in the plan and that usually the notices are sent to the employee's residence; he testified that Mr. Landry's notices were sent to a post office box in Gonzales. Mr. Hlebak testified, utilizing the annual statement for the period ending December 31, 1975, that if Mr. Landry had terminated his employment at any time in 1976 all that he would have been eligible to receive as a lump-sum would have been $1,762.51, representing his contribution to the plan and interest thereon. However, utilizing the same statement, he testified that if Mr. Landry had terminated his employment in 1976 and had left his accumulated contributions intact Mr. Landry would have been entitled to a deferred monthly retirement benefit of $342.20 beginning at age 62. The statement, offered in evidence as a joint exhibit, reflects Mr. Landry's date of birth as being March 13, 1928 and that he commenced his employment at Kaiser on May 18, 1957. Defendant's answer to plaintiff's request for admissions states that he became a salaried employee in December, 1965. Mr. Hlebak testified, and the retirement plan introduced into evidence states, that after serving for ten or more years in a salaried position, an employee's right to receive a retirement benefit, although deferred to age 62, becomes vested and that the deferred but vested retirement benefit at the end of 1975 was $342.20. On re-direct, Mr. Hlebak testified that in the event Mr. Landry had terminated his employment with Kaiser in 1976 and had elected to withdraw the accumulated contributions and interest at that time he would have been eligible for a deferred retirement benefit of $302.00 per month at age 62.
At the time Irene filed the separation suit in which the judgment was rendered, Mr. Landry had 19 years, 1 month and 26 days of service in Kaiser's employ, as reflected by the annual statement ending December 31, 1975 and an extension of calculations thereon.
On February 28, 1983, Mr. Landry was terminated because of economic conditions which necessitated a reduction of Kaiser's work force when the Gramercy facility was reorganized. He opted to take his "full early retirement" benefits in the form of a lump-sum payment, provided for in the retirement plan. The amount of the lump-sum payment he received shortly after March 11, 1983 was $94,579.10. Irene sought, via an amended petition, one-half of the lump-sum payment after discovery procedures produced the precise amount that had been paid. In Irene's post-trial memorandum of authorities, she sought judgment for $34,243.19 on the basis of formulae set out in case law. In her appellate brief, Irene asserts she is entitled to $34,012.83 "from the supplemental partition of retirement benefits," again utilizing formulae set out in case law.

*1020 ASSIGNMENTS OF ERROR
Irene assigns as errors the trial court's
1. finding that the hand printed document the parties signed included a transfer of the spouses' "interest in the vested benefits" of the retirement plan to Mr. Landry and that the document constituted a community property settlement which had been ratified by the actions of the parties; and
2. holding that Irene was not entitled to a supplemental partition of the community assets because nothing was omitted from the hand printed settlement document.

DISTRICT COURT
After observing that Irene, but not Mr. Landry, was present in court on July 30, 1976 "when the Separation from Bed and Board was rendered" and that the formal judgment "was not signed until February 24, 1978," the trial court reasoned, in part, as follows:
... Plaintiff and Defendant both believed in good faith, that they were legally separated on July 30, 1976. The evidence ... established that following her appearance in Court on July 30, 1976,... the parties sat down and consummated a property settlement.... At issue... is a KRP Retirement Plan....
The parties decided in the property settlement that defendant would keep the KRP Program and plaintiff would receive benefits equal to one-half of the value they ascribed to the KRP Program at Kaiser Aluminum. On February 28, 1983, Mr. Landry was forced into an early retirement ... for which he received $94,597.10 [in a lump sum] as his interest in the retirement program. Plaintiff now claims that she is entitled to one-half of these proceeds, despite the fact that the parties proported (sic) to divide all items of property belonging to the community on or about July 30, 1976.
The initial issue ... is ... whether ... the ... settlement is valid, as between the parties thereto.
The evidence ... clearly established that the parties, ..., entered into a community property settlement ... prior to judicial termination of the community....
... [T]he parties can and did ... ratify said agreement.
. . . . .
... Succession of Tucker, 445 So.2d 510 (La.App. 3d Cir.1984) ... the current jurisprudence on the subject of the spouse's entitlement to share in a retirement plan which was omitted from their portion of community property ... is not applicable herein where the retirement plan was not omitted but was specifically included in the partition of community property.
... The evidence ... clearly established that ... Kaiser ... sent the parties information on a yearly basis concerning the value of KRP Program, which was equally at the disposal of both plaintiff and defendant.... [T]here is not even a scintilla of fraud in this case. [Because] ... both parties had access to all facts concerning the retirement plan, the Court will not now hear one of the parties complain of fraud or mistake....
(Brackets, single underscoring, and parentheses supplied.)
The ultimate issue presented in this appeal is whether Irene is entitled to a supplemental partition of the vested benefits of Mr. Landry's retirement plan at the time of their legal separation. Before answering the ultimate issue it is first necessary to determine whether the spouses intended that the hand printed separation of property instrument effectuated a division of the accumulated contributions only, totaling $1,762.51 through December 31, 1975, or whether Mr. Landry's vested but deferred right to receive a retirement benefit of $342.20 or $302.00 (depending upon whether the $1,762.51 would have been left in the retirement fund or withdrawn as a lump-sum in 1976) was also contemplated by the "agreement."

TERMINATION OF COMMUNITY
At the outset we observe that the trial court incorrectly stated "the agreement" *1021 was executed "prior to judicial termination of the community," an error perpetuated, verbatim, from defendant's post-trial memorandum. La.C.C. art. 155, as it read in 1976, provided, in pertinent part, that:
The judgment of separation from bed and board carries with it the separation of goods and effects and is retroactive to the date on which the petition for same was filed, ...
Subsection "A" of La. C.C. art. 155 presently states, in pertinent part, that:
The judgment of separation from bed and board carries with it the separation of goods and effects and is retroactive to the date on which the original petition was filed in the action in which the judgment is rendered, ...
The underscored language represents a codification of the jurisprudence interpreting Article 155 and is not stating a new principle of law. Thus, before 1976, as now, the rendition or pronouncement of Irene's judgment of separation on July 30, 1976 effectively terminated the community retroactive to July 13, 1976, the date on which the "petition for legal separation" was filed and which culminated in the rendition of the judgment.
Having concluded that the community of acquets and gains was terminated on July 13, 1976, we need not address the rationale or holding of the trial court that "the parties can and did ... ratify said agreement."

RETIREMENT PLAN
The trial court held Irene was not entitled to a supplemental partition of the vested but deferred retirement benefits to which Mr. Landry was entitled in 1976 because "the retirement plan was not omitted but was specifically included in the partition of community property." Thus, the court reasoned that Succession of Tucker, 445 So.2d 510 (La.App. 3d Cir.1984), writ denied, 447 So.2d 1077 (La.1984), was inapplicable to the facts of the case at Bar.
Irene argues in her appellate brief that T.L. James & Company, Inc. v. Montgomery, 332 So.2d 834 (La.1975) entitles her to "collect one-half of all the payments arising from contributions made during the community even if no payments are available from the plan until well after dissolution of the community" in addition to "one-half of any interest earned on funds contributing to the plan during the existence of the community, including interest earned after dissolution until partition of the retirement plan is completed," citing for the latter proposition Miller v. Miller, 405 So.2d 564 (La.App. 3d Cir.1981). She argues that the vested benefits, a community asset, were never divided; the testimony of each one "indicates that the parties intended to equally divide all the community assets"; Mr. Landry "failed to consider the vested benefits available to him at the time he and Appellant executed the voluntary partition agreement"; and Mr. Landry "admitted having only included a value of $1,762.51, representing only his own contribution to the retirement plan." Relying on Succession of Tucker, supra, Irene concludes that in the present case, as in Tucker,
... Each spouse continued to be the owner of one-half of the value of the right to share in retirement benefits insofar as attributable to contributions paid into the fund as deferred compensation to employee during the existence of the community....
Mr. Landry argues in his appellate brief, as he did in his post-trial memorandum, that "this arm's length agreement was reached by the parties with full knowledge of all assets vested in the community at that time" and "the community property settlement ... specifically provides for the assets of the KRP Kaiser Retirement Program," thus, the trial court's refusal to order a supplemental partition was proper.
We have closely scrutinized the entire record, including the computerized annual statements offered in evidence, furnished by Kaiser to Mr. Landry regarding the retirement plan. The testimony of Kaiser's representative who was in charge of administering the retirement program established that the notices were mailed to Mr. *1022 Landry at a post office box address and the notices are consistent with his testimony. Irene testified that she picked up the mail at the post office "once in a while" but Mr. Landry usually picked it up and "he got home before I could look at it." She further testified that "I never read them [the notices] because I didn't understand them" and "I never held them in my hand and looked at them ..."
Mr. Landry testified, on cross-examination during the presentation of Irene's case, in response to the question "Did ya'll make any attempt to divide the community property?", that "Everything was divided." Also on cross-examination he stated that annual notices concerning the retirement plan were mailed by Kaiser to the retirement plan participant's home and he did not except himself from that statement. Concerning the retirement plan, Mr. Landry testified, on cross-examination, in part as follows:
Q. Okay. The next item.
A. The retirement plan which I had $1,762.00 in. I kept that.
Q. All right now. This is the retirement plan that we've been referring to.
A. That's right.
. . . . .
Q. Was it your intention to include everything from your retirement ... from retirement plan with Kaiser in that settlement?
A. Sure was.
Q. And to your knowledge, did the $1,762.00 represent the full amount that you had in your retirement plan?
A. That was it.
Q. Okay. If it had been worth anything more than that, would you have included that in the settlement?
A. Sure would have.
No attempt was made to contradict Irene's testimony that she never saw or read any annual notice stating on its face the entitlement to a vested but deferred retirement benefit Mr. Landry would be eligible to receive at age 62 if he had terminated his employment with Kaiser at the time of the judicial separation.
The annual notice for the period ending December 31, 1975, designated as joint exhibit number 3, shows that Mr. Landry was credited with 18 years and 7 months of service, reflects his date of birth as being March 13, 1928, his beginning service date as May 18, 1957, and contributions and interest totaling $1,762.51. The notice also contains the statements, as follows:
If you had terminated your employment on 12-31-75, you would have been eligible for a deferred vested pension. Your monthly pension beginning at age 62 would be $342.20. You may elect to receive your contributions plus interest before age 62, with your pension payable at 62 reduced accordingly.
Irene testified that Mr. Landry "put the figure of $1,762.00" on the community property settlement and if he mentioned anything about a vested but deferred retirement benefit she "was too upset" and "didn't know about it." Her testimony was not contradicted.
The trial court's findings that "Kaiser Aluminum sent the parties information on a yearly basis concerning the value of the KRP Program, which was equally at the disposal of both plaintiff and defendant" and the retirement plan, including the vested but deferred aspects, "was not omitted but was specifically included in the partition of community property" are clearly or manifestly erroneous. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
The record as a whole supports our holding that Mr. Landry's deferred vested pension benefits were omitted from the document the parties signed following the rendition of separation judgment on July 30, 1976. Accordingly, Irene is entitled to a supplemental partition of community property so that the deferred vested pension benefits aspect of the community formerly existing between her and Mr. Landry can be divided in accordance with settled jurisprudence. Succession of Tucker, supra. The record contains adequate information for us to partition those benefits rather *1023 than remand for partition by the trial court and the possibility of prolonging the matter by additional appeals.

CALCULATIONS UTILIZED
In T.L. James & Company, Inc., supra, on rehearing, the Supreme Court, per Tate, J., adopted and affirmed the conclusions reached in the original opinion, "in the following respects," in pertinent part:
2. Each contribution ... to the funds entitles the employee or his beneficiary to share subsequently in the funds' proceeds; when made during the community, the property right to share ultimately in the proceeds thereby acquired by the wage earner, is "acquire[d] during the marriage," Civil Code Article 2402 and is thus a community asset.... Therefore, the value of the right to share proportionately in the fund, which right is contractually by virtue of each contribution, falls into the community during which the contribution is made; ...
3. The value of the right to share in the retirement and profit-sharing funds is an incorporeal, movable right. When acquired during the existence of a marriage, the right-to-share is a community asset which, at the dissolution of the community, must be so classifiedeven though at the time acquired or at the time of dissolution of a community, the right has no marketable or redeemable cash value, and even though the contractual right to receive money or other benefits is due in the future and is contingent upon the happening of an event at an uncertain time.... When a community is dissolved, the employee's spouse is thus entitled to be recognized as the owner of one-half of the right-to-share, insofar as attributable to the contributions paid into the fund ... during the existence of the community (i.e., even though it may not by the contract be payable at that time).... However, when the proceeds do become payable under the contract to the employee or his beneficiary or estate, the spouse is entitled at that time to receive payment as owner of her share of the proceeds, based upon the value of the right-to-share acquired during the community formerly existing between her and the wage earner.
332 So.2d 834, at 851-852.
The Supreme Court of Louisiana, in Sims v. Sims, 358 So.2d 919 (La.1978), per Tate, J., applied the principles laid down in T.L. James & Co. to a dispute between a retirement plan member and his former wife although the member was employed when the community terminated and when the Supreme Court decided the matter, at which latter time, as stated in footnote 4, if the member had terminated his employment on the date the community was dissolved the community interest in the retirement plan would have had an immediately redeemable cash value "if the employee had elected to receive the return of his contributions ... instead of opting for receiving deferred retirement benefits commencing at age 62 ... [but] [h]e did not do so, however, so this valuation is inapplicable.
Justice Tate observed that:

Until the employee is separated from the service, dies, retires, or becomes disabled, no value can be fixed upon his right to receive an annuity or upon lump-sum payments or other benefits to be paid upon his account.
and reasoned further, in pertinent part, that:
Nevertheless, ..., the wife is entitled to a declaration at this time of the interest attributable to the community of any such payments, if and when they become due in the future. The interest attributable to (acquired by) the community in such payments, when they become due, is the proportionate part of them which results from a spouse's employment or contributions during the existence of the community. When the community is dissolved, the non-employed spouse is entitled to have recognized his or her one-half interest in this community asset, i.e., the right to receive payments from employee benefit plans, *1024 to the extent (proportion) that these payments result from the employment or contributions during the community....
. . . . .
... [T]he husband's creditable service during the existence of the community was 19 years, 5 months. The ... wife has a one-half interest in compensation to the ... husband which is attributable to that period. The proper ratio can be expressed in this way:
Portion of pension attributable to creditable service during existence of community (19 years, 5 months) × ½ × annuity (or lump-sum payment). Pension attributable to total creditable service...
. . . . .
358 So.2d 919, 923-924. (Emphasis supplied.)
The Sims formula has been applied in Thrash v. Thrash, 387 So.2d 21 (La.App. 3d Cir.1980) and Succession of Tucker, 445 So.2d 510 (La.App. 3d Cir.1984). Tucker involved a supplemental partition, as we declare to be Irene's entitlement in the present case.
At the time Mr. Landry was forced to take early but full retirement on February 28, 1983, his age was 54 years, 11 months, and 13 days; his creditable service in the retirement plan was 25 years, 9 months, and 18 days, or 25.8 years. He exercised Option # 7 under the retirement plan and accepted a lump-sum payment of $94,579.10 in lieu of receiving a monthly benefit, commencing with his full early retirement, of an unstated amount. When the community was terminated on July 13, 1976, the date the petition for separation was filed, Mr. Landry's creditable service in the retirement plan totaled 19 years, 1 month, and 26 days, or 19.15 years. Irene, therefore, has an interest in the lump-sum payment made to Mr. Landry, calculated as follows:
Portion of lump-sum benefits attributable to creditable service during the existence of the community (19.15 years) divided by total creditable service (25.8 years) × ½ × $94,579.10 (lump-sum payment) = $35,100.57 (less a credit for ½ of the accumulated contributions received constructively immediately following rendition of separation judgment or a net amount of $34,219.32.
The above is stated another way, as follows: 19.15 divided by 25.8= .742248 × .50= .371124 × $94,579.10 = $35,100.57 less the $881.25 constructively received in the post separation partition equals $34,219.32.
Accordingly, we reverse the judgment of the trial court dismissing plaintiff-appellant's suit for supplemental partition of the community assets, and render judgment in favor of Irene Schwartz Landry Roy and against Whybra Landry for the sum of $35,100.57, representing .371124 of the lump-sum payment of $94,579.10, subject to a credit of $881.25 plaintiff-appellant constructively received July 30, 1976, a net award of $34,219.32, plus legal interest thereon from date of judicial demand until paid. Defendant-appellee, Whybra Landry, is cast for all costs of these proceedings at the district court level and all costs of appeal. La.C.C.P. art. 2164.
REVERSED AND RENDERED.
EDWARDS, J., concurs in the result.