WICKER, Judge.
Louis J. Mailhes, Jr. appeals judgments in favor of his former wife, Mary Ann Ricks Mailhes, which resulted in an award to her of a portion of his retirement benefits. We affirm.
Mr. Mailhes contributed to the Plumbers and Steamfitters Local 60 Pension Fund Benefit Trust for several years preceding his marriage to Mrs. Mailhes in 1965. During the existence of the marriage, from August 20, 1965, until their judgment of separation on August 19, 1976, a community of acquets and gains existed between Mr. and Mrs. Mailhes. The community made contributions to that pension fund from 1965 until 1976. Mr. and Mrs. Mailhes divorced on July 7, 1978; and they entered into an act of partition of their community property on August 24, 1979. That act of partition did not include Mr. Mailhes’ pension benefits but recited:
Appearers herein represent that the above described assets of the community previously existing between them are an accurate listing and accounting of all said assets to the knowledge of each party and this Agreement is consented to by both parties in reliance thereof.
As the result of this Agreement and representation made therein, Appearers herein discharge each other from any further accounting of the community which formerly existed between them; the same being fully liquidated as set forth above.
In December of 1987, Mrs. Mailhes filed a petition for supplemental partition of the community, alleging that the pension benefits were left unpartitioned “through the mutual oversight” of the parties. Mr. Mailhes filed exceptions of prescription as well as an affirmative defense to the effect that he and Mrs. Mailhes had intended that he retain sole interest in his pension. Two judgments were rendered: January 24, 1989, decreeing Mrs. Mailhes to be part owner of the pension benefits and Febru *1004 ary 15,1989, to the same effect. The judge reasoned:
Now, it seems that when an agreement of this type goes into all the different items that are concerned, like one bedroom, a maple kitchen table, a refrigerator, and lists all of those things out, a riding lawn mower, sofa, and it gives the age of the property and all that, and I feel that certainly something as important as a pension plan would have been somewhere, something said about the appearance or the existence of the pension plan and the purpose to be used or how it was to be settled in the community. The Court is of the opinion that in accordance with the agreement signed, neither party took into consideration the pension plan as part of the community property and that the pension plan should have been included and the wife should be entitled to her portion of it for the years that she lived or rather that they lived together in accordance with the distribution as required under the statute. It goes to the number of years that they lived together, the time they spent, and on that we can have if there’s any difference or any questions about that, we can go into that or into the prescriptive period of 2369....
The prescription issue was never addressed.
Mr. Mailhes appealed these judgments timely. However, this court converted the appeal to a writ application since it considered these judgments interlocutory. No. 89-CA-289, September 15, 1989. We denied the writ.
Mrs. Mailhes filed a rule to determine the amount of pension benefits owed her, resulting in an additional judgment of May 22, 1990: “[T]he parties were married for eleven years, and the attributable employment to the pension was was [sic] 29.5 years and therefore the percentage ownership of Mary Ann Ricks Mailhes is 18.6 percent of the pension_” Mr. Mailhes moved for a new trial, which was denied. The judge reasoned:
The courts in the past have looked very closely at community property settlements and the phrase “we settle any and all claims” has been interpreted very very strictly when it comes to whether or not the community — whether or not the pension plans were addressed. In this particular agreement there’s nothing conclusive that the pension plan was addressed. There was definitely no specific language saying this settles any and all pension plans....
Mr. Mailhes appealed alleging errors in finding his pension community property, in ruling Mrs. Mailhes a part owner rather than a creditor, in permitting parole evidence to vary the terms of an authentic act, in finding that Mrs. Mailhes did not know of the pension at the time of the partition, in finding Mrs. Mailhes’ claim not prescribed, and in applying the Sims v. Sims formula to calculate Mrs. Mailhes’ share of ownership.
Mrs. Mailhes testified she was aware her husband was a member of the union and would one day receive a pension. However, she didn’t know the pension was part of the community. The attorney who prepared the partition agreement was the bank attorney. He prepared it in connection with her borrowing $8,000.00 from the bank to pay Mr. Mailhes his share of the value of the house, which she received in the partition while assuming the mortgage balance. The attorney said nothing about the pension’s being community property, and it was never mentioned. On cross-examination, she admitted she contacted the union to ask what she was entitled to; but she never got a response and didn’t do anything further about whether she had any rights to the pension.
Mr. Mailhes testified the community property settlement was drawn up by two lawyers, but he wasn’t there. His wife didn’t ask for the pension, and that’s why he signed what he did. She got what she asked for, so the pension was not mentioned in the partition. Otherwise, he would have split everything down the middle and Mrs. Mailhes wouldn’t have gotten the house. He testified that he never went over the partition with his attorney; the only paper he ever signed was a release for *1005 the $8,000.00 check. He had many discussions with Mrs. Mailhes about her entitlement to a portion of the pension. “I told her she could have everything if she would not ask for the pension, and when I learned the pension was not mentioned in the partition, I signed. She asked for the house and everything else, and she got what she asked for.” His wife didn’t offer him the $8,000.00 for his share of the equity in the house but, he implied, this was repayment of money Mrs. Mailhes had taken from their joint account during their marriage and put in her separate account.
On rebuttal, Mrs. Mailhes testified that she and her husband never had discussions about not mentioning the pension if he would give her whatever she wanted. They only had a joint account, and she didn’t have an account her husband didn’t know of.
CHARACTERIZATION OF THE PENSION
Community property was generally defined, prior to the January 1, 1980, revisions of the law of matrimonial regimes as “that which is acquired by the husband and wife during marriage ...” with certain exceptions. Former La.C.C. art. 2334. It is now generally defined as “property acquired during the existence of the legal regime.” La.C.C. art. 2338. Property in possession of a spouse during the existence of the community is presumed to be community. La.C.C. art. 2340. This article is retroactive to eases arising prior to the effective date of the revised community property law. Tullier v. Tullier, 464 So.2d 278 (La.1985).
Mr. Mailhes’ pension was, at least in part, acquired during the marriage. It should be presumed to be community property unless he rebuts that presumption. The retirement benefits were not acquired when Mr. Mailhes became a member of the fund but were acquired over time with each contribution. T.L. James & Co., Inc. v. Montgomery, 332 So.2d 834 (La.1975); Lewis v. Lewis, 467 So.2d 179 (La.App. 3rd Cir.1985). Mr. Mailhes’ pension falls within the definition of a community asset, and he has not rebutted the presumption by any evidence to the contrary.
The Supreme Court has held previously that pension plans are community assets. T.L. James & Co., Inc. v. Montgomery, supra. Many cases since T.L. James have followed this ruling. Eskine v. Eskine, 518 So.2d 505 (La.1988); Sims v. Sims, 358 So.2d 919 (La.1978).
Mr. Mailhes argues that the facts of this case make it distinguishable from those in Sims v. Sims, supra, and that the formula for dividing a pension between former spouses which the Supreme Court mandated in that case is not applicable. However, he does not explain why the Sims formula is inapplicable or what other formula should be applied.
We hold the judge was correct in deeming the pension to be community property and in applying the Sims formula to calculate Mrs. Mailhes’ portion of the pension. SUPPLEMENTAL PARTITION
In Roy v. Landry, 489 So.2d 1018 (La.App. 1st Cir.1986), the legally separated husband and wife executed a hand-written partition of their movable property, prepared by the husband and witnessed by their son-in-law. The agreement included the husband’s pension, which he had valued at about $1,700.00, representing the contributions he had made up until that time. The husband took a lump-sum early retirement in 1983 of about $94,000.00. The wife sued for a supplemental partition. Both parties testified that it had been their intent at the time of the original partition to completely divide their community property. The court held that the husband’s vested deferred retirement benefits had been omitted from the partition and that the wife was entitled to a supplemental partition according to the Sims formula.
In Succession of Tucker, 445 So.2d 510 (La.App. 3rd Cir.1984), writ denied 447 So.2d 1077 (La.1984), the parties executed a partition agreement in 1967 which omitted the husband’s pension rights.- Both husband and wife testified that they had not considered his pension rights at the time of the partition, although the agreement itself recited that it was “a full, final and com- *1006 píete receipt and release from any and all claims which they may have.... ” The court held:
Under these facts we find that the partition agreement does not have the effect of transferring either spouse’s interest in the retirement benefits to the other spouse, ...
LSA-C.C. art. 1308 provides that an action of partition lies between all persons who hold property in common. LSA-C.C. art. 1401 provides that the mere omission of a thing from the partition is not ground for recission, but simply for a supplementary partition. The plaintiff here asks for nothing more than a supplementary partition of a community asset omitted from the original community property settlement through mutual oversight.
At 513.
Mr. Mailhes cites us to the case of Gay v. Martinolich, 271 So.2d 689 (La.App. 1st Cir.1972). That case did hold that the partition agreement at issue, an authentic act, was “full proof of the agreement contained in it (C.C. Art. 2236), and this court is powerless to vary its terms by parol evidence elicited from witnesses in the trial court (C.C. Art. 2276).” At 691. Nevertheless, the court recognized the community nature of the omitted immovable property, held that the property belonged equally to the former husband and wife in undivided ownership, and reversed a trial court judgment in favor of the husband.
We hold that Mrs. Mailhes was entitled to a supplementary partition of Mr. Mailhes’ retirement benefits.
PRESCRIPTION
Mr. Mailhes cites the various Civil Code articles for three, five, and ten year prescription and argues that one or the other of them should apply. We disagree.
The pension benefits in question, having not been partitioned earlier, remain co-owned in indivisión by Mr. and Mrs. Mailhes. “The action of partition cannot be prescribed against, as long as the thing remains in common, and such community is acknowledged or proved.” La.C.C. art. 1304. See Succession of Tucker, supra and Rasbury v. Baudier, 370 So.2d 659 (La.App. 4th Cir.1979).
We hold that Mrs. Mailhes’ action for a supplemental partition is not prescribed.
We affirm the judgment in favor of Mary Ann Ricks Mailhes and against Louis J. Mailhes, Jr. Mr. Mailhes must pay the costs of this appeal.
AFFIRMED.