JjPLOTKIN, Judge.
This case presents a unique problem caused by the fact that Louisiana’s appellate courts have consistently misapplied the formula established in Sims v. Sims, 358 So.2d 919 (La.1978), for dividing defined benefit retirement and pension plans in community property partition cases. As explained below, the evolution of the “Sims formula” in a *72 direction that is not consistent with the illustration of the formula contained in Appendix A of the Sims opinion has created an aberration of law that should be considered by the Louisiana Supreme Court. Although we find that the trial court, following the precedent of many reported cases on the issue, misapplied the formula, we are forced to affirm, but only because we feel compelled to follow the previous decisions of this circuit that have improperly interpreted Sims. However, we would urge the Louisiana Supreme Court to consider this case in an effort to correct an obvious error in the jurisprudence construing and applying Sims.

Evolution of “Sims formula”

In Sims, the Louisiana Supreme Court established the following formula for determining a non-employed spouse’s portion of a defined benefit retirement or pension plan:
[[Image here]]
Id. at 924 (emphasis added). In setting out this formula, the Supreme Court made two notations: (1) just above the line separating the numerator and denominator of the first fraction, the court noted that the years of creditable service during the existence of the community in Sims was 19 years, 5 months; and (2) at the end of the first fraction, the court noted that the total years of creditable service was “still not determined.”
Appendix A to Sims contained the following “illustration of the application of the formula”:
In illustration of the application of the formula, we compute the community’s (and the wife’s) interest in any pension payable to the husband, if he had retired on March 18, 1978 (i.e., after 21 years and 9 months of service as federal air controller, during 19 and 5 months of which he was married to the defendant and living in community with her). The figures below are set forth merely by way of illustration. No claim is made to exact mathematical accuracy or to the necessary correctness of the husband’s average pay ($19,599.30) roughly calculated as the basis for the pension annuity.
As presently enacted, 5 U.S.C. § 8339(a) apparently provides that Mr. Sims’ annuity will be calculated on the basis of 1 ½ per cent for his first five years, 1¾ per cent for his next five years, and 2 per cent for each additional year.
If he were to retire March 18, 1978, the calculation would be as follows:
[[Image here]]
Of this amount the following is attributable to his employment during the community:
*73 [[Image here]]
The wife’s share of the community attributable to her one-half interest in the community is therefore calculated as follows:
[[Image here]]
lg/d at 925.
The first reported appellate court opinion to apply the Sims formula was Succession of Jackson, 402 So.2d 753 (La.App. 4th Cir. 1981). In that case, the court used the Sims formula to determine the amount of the annuity owed to the former spouse of a deceased annuitant. The court stated, in pertinent part, as follows:
The annuity contract provides that upon the death of the annuitant, Mr. Jackson, prior to the maturity date Commercial Union will pay, “... the cash value of the policy at the date of death or the total amount of premiums paid under the policy if greater ...” Upon dissolution of the community, the cash surrender value of the policy was $4,177.20. Upon the death of Allen Jackson, the cash surrender value was $9,284.35. Apparently, the premiums paid by the decedent were less than the cash value and therefore, the figures indicated for cash value are those that are to be used in the formula previously indicated. The proper formula can be expressed as follows:
[[Image here]]
Accordingly, Dorothy Jackson’s ½ interest in the proceeds attributable to the community with Allen Jackson is $2,088.60. Jackson, 402 So.2d at 758. Thus, the Jackson case determines the non-employed spouse’s portion of the annuity by dividing the portion of the pension by the pension, in conformity with the illustration in the Sims case. We note that in the Jackson case, it was unnecessary to consider the number of years of creditable service during the community as opposed to the total number of years of creditable service.
The Jackson case is the only reported case in Louisiana that applies the Sims formula in compliance with the illustration of the application of the formula in Appendix A of Sims by dividing money (portion of the pension attributable to creditable service during existence of community) by money (pension attributable to total creditable service). Thereafter, all the Louisiana circuit courts of appeal have applied the Sims formula by dividing time (number of years of creditable service during the existence of the community) by time (total number of years of creditable service). See, for example, the following-cases decided after Jackson but before the June 21, 1988, judgment at issue in the instant case: Simmons v. Simmons, 453 So.2d 631 (La.App. 3d Cir.), writ denied, 458 So.2d 476 (La.1984); McCoy v. McCoy, 460 So.2d 641 (La.App. 4th Cir.1984); Roy v. Landry, 489 So.2d 1018 (La.App. 1st Cir.1986); Hen *74 son v. Henson, 499 So.2d 1024 (La.App. 3d Cir.1986). Nowhere in any of the eases interpreting the “Sims formula” or in any of the numerous law review |4articles on the division of retirement and pension plans is this inconsistency noted or explained. See, e.g., Dian T. Arruebarrena, Applying Louisiana’s Community Property Principles to Pensions, 33 Loy.L.Rev. 241 (1987); Lee Hargrave, Developments in the Laiv 1990-1991: A Faculty Symposium: Matrimonial Regimes, 52 La.L.Rev. 655 (1992); Katherine S. Spaht, To Divide or Not to Divide the Community Interest in an Unmatured Pension: Present Cash Value Versus Fixed Percentage, 53 La.L.Rev. 753 (1993); Comment, Retirement Equity Inaction: Division of Pension Benefits Upon Divorce in Louisiana, 48 La.L.Rev. 677 (1988).
Of special interest to the instant appeal is the McCoy opinion, in which this court applied the time divided by time formula rather than the money divided by money formula illustrated in Appendix A to the Sims opinion. McCoy, which was submitted to the court en banc because it reversed a previous opinion of this court on a different issue, states, in pertinent part, as follows:
The Supreme Court of Louisiana in [T.L. James & Co. v.] Montgomery[, 332 So.2d 834 (La.1976) ] and Sims held both private and statutory pension proceeds to be community property. On the basis of Montgomery and Sims we hold that, in the instant case, the retirement benefits acquired during the marriage are community property and the divorced wife has a one-half interest in that portion of the husband’s state retirement benefits acquired during the marriage which, using the formula of Sims, may be calculated as follows:
[[Image here]]
Mrs. McCoy is therefore entitled to 48.62% of every pension cheek that Mr. McCoy has received since the dissolution of the community and will hereafter receive.
Id. at 644-45.
As is obvious from the discussion of the above eases, by 1988, when the judgment in the instant case was issued, the “Sims formula” had been jurisprudentially modified to apply a years divided by years formula to determine the amount of a defined benefits retirement or pension plan owed to a non-employed spouse. This interpretation has persisted, as indicated by the Louisiana Supreme Court’s statement in Hare v. Hodgins, 586 So.2d 118 (La.1991), that under the “Sims formula,” “the community portion of the pension right is adeemed to be the same fraction that results when the length of the employee spouse’s creditable employment during the community is divided by the length of his total creditable employment.” Id., 586 at 125.
In many instances, a court’s decision to apply a time-divided-by-time formula rather than a money-divided-by-money formula is immaterial. This would have been true in the Sims case if a constant percentage had been used to determine the amount of the annuity or lump-sum payment. The only problem with using a time-divided-by-time formula rather than a money-divided-by-money formula occurs when the annuity or lump-sum payment is determined by some type of formula other than a fixed percentage, as it was in the Sims case. In fact, if the Supreme Court had applied a time-divided-by-time formula, rather than a money-divided-by-money formula in the Sims case, the calculation would have looked like this:
[[Image here]]
*75 Application of the money-divided-by-money formula employed by the Louisiana Supreme Court in the Sims case resulted in $3,438.67; application of the time-divided-by-time formula results in $3,466.89. Although the difference is not significant in the Sims case, when the illustration assumed that the employed spouse worked only 2 years, 4 months after the dissolution of the community, it could be significant under another set of circumstances, such as those occurring when the employed spouse works many years after the dissolution of the community, or when the percentage to be applied to determine the annuity increases dramatically for the years after the dissolution of the community. Thus, the fact that the circuit courts of appeal have misapplied the original “Sims formula” might be significant in some cases.

Application to the instant case

The instant case involves the partition of the community that formerly existed between Robert Martinez and Katherine deMontluzin, who were married in 1957 and obtained a legal separation in April of 1985. The civil district court rendered a judgment partitioning their community property on June 21, 1988. On appeal from that partition | ¿judgment by both parties, this court issued • an opinion that affirmed in part, reversed in part, and amended in part the trial court judgment. Martinez v. Martinez, 556 So.2d 668 (La.App. 4th Cir.1990), writ denied, 560 So.2d 23 (La.1990).
The original trial court judgment stated that Mr. Martinez’s Lykes Pension Plan was to be partitioned in accordance with the “Sims formula”; that part of the original judgment was not modified on appeal. Thereafter, on October 21, 1993, the trial court issued an “Appendix to Judgment: Qualified Domestic Relations Order” (hereinafter “QDRO”) that implemented the portion of the original judgment that ordered that the Lykes Pension Plan be partitioned according to the Sims formula. The QDRO provided, in paragraph 5, as follows:
The Plan from which benefits are assigned under Paragraph 3 above shall pay benefits to the Alternate Payee under the following formula:
Alternate Payee’s Benefit = N/D X 1/2 X Accrued Benefit
N = The years of creditable service during the existence of the community from August 23, 1957 to April 23, 1985 as determined in accordance with the provisions of the Plan. (27 years, 10 months)
D = The years of total creditable service at the earlier of (i) the date the Alternate Payee’s benefit is to commence (if the Alternate Payee elects an early distribution) or (ii) the Plan’s normal retirement date, as determined in accordance with provisions of the Plan, (still not determined)
Accrued Benefit = The Participant’s vested benefit (payable at the Plan’s normal retirement date) as determined on the date the Alternate Payee’s benefit is to commence as determined in accordance with provisions of the Plan.
If the Alternate Payee’s benefit commences after the Participant’s normal retirement date and the Participant has not retired:
D = The years of total creditable service on the date the Alternate Payee’s benefit is to commence as determined in accordance with provisions of the Plan.
Accrued Benefit = The Participant’s vested benefit as determined on the date the Alternate Payee’s benefit commences as determined in accordance with provisions of the Plan.
Following the issuance of the QDRO, Mr. Martinez filed a motion for new trial that was denied by the trial court. In its written reasons for denying the motion, the trial court stated as follows:
|7The Court determines that the Qualified Domestic Relations Order issued on October 21, 1993, in the captioned matter correctly applies the formula, as established in Sims v. Sims, 358 So.2d 919 (La.1978), to be used in determining a non-employee spouse’s interest in future benefit payments. The Sims case establishes, and subsequent jurisprudence confirms, that the “community property” fraction of the Sims formula is what can be described *76 as a time fraction, the numerator being the number of years of credited service during the community and the denominator being the total number of years of creditable service. The Qualified Domestic Relations Order issued in this case correctly instructs the Plan as to how to divide the pension benefits in accordance with the Sims case.
From the judgment denying the motion for new trial, Mr. Martinez appeals, claiming that the original judgment saying the Lykes Pension Plan is to be divided according to the Sims formula is a final judgment and asserting that the formula included in the QDRO is not the Sims formula. On appeal, Mr. Martinez actually contests two portions of the above formula established by the QDRO: (1) he claims that the first portion of the formula (N/D) as defined in the QDRO violates the Sims formula, and (2) he claims that definition of the third portion of the formula (accrued benefit) is improper under the circumstances presented by this case.
First, Mr. Martinez claims that the first portion of the formula is wrong because he is entitled, under the terms of the original judgment in the partition case, to application of a money-divided-by-money formula as illustrated in Appendix A of Sims, rather than the time-divided-by-time formula applied by the trial court in compliance with the interpretation of Sims that has been consistently followed by Louisiana circuit courts of appeal. Mr. Martinez claims that the original judgment requiring that the pension plan be divided according to the Sims formula is final and that he is therefore entitled to application of the formula as illustrated in Appendix A of the Sims opinion.
Although we believe that Mr. Martinez’s arguments have merit, we are compelled to affirm the trial court judgment denying the motion for new trial on this issue. Although Mr. Martinez is correct that a “pure” Sims formula would require the application of a money-divided-by-money formula, the state of the law at the time the judgment in the instant case was issued in June of 1988 included all the judicial interpretations of Sims discussed in the section above. Most significantly, the controlling jurisprudence on the issue in this court atjgthe time the judgment was issued is McCoy, 460 So.2d at 644-45, an era banc opinion that applied a time-divided-by-time formula. We are bound by that opinion, as well as by the subsequent jurisprudence that has consistently applied a time-divided-by-time formula, especially in light of the Louisiana Supreme Court’s statement in Hare, 586 So.2d at 125, that the Sims formula is a time-divided-by-time calculation.
Second, Mr. Martinez argues in brief that the third portion of the Sims formula as defined by the QDRO is wrong. Mr. Martinez claims that amount of the “accrued benefit” factored into the formula in the instant case should be based on what his annuity would have been had he retired at the time of the dissolution of the community, rather than the actual amount of his annuity, that is based on his average salary during his final five years of employment, all of which occurred after the dissolution of the community between himself and Ms. deMontluzin. Although the logic of this argument is also obvious, the following language from the Sims case indicates that one of the purposes of that decision was to foreclose such arguments:
The community interest stems not only from contributions made by community funds, but also by reason of any right to receive proceeds attributable to such employment during the community (i.e., as an asset “acquire(d) during the marriage,” Civil Code Article 2402), whether based on the community’s contributions or not.
Sims, 358 So.2d at 922.
In the instant case, the community formerly existing between Mr. Martinez and Ms. deMontluzin acquired an interest in the Lykes Pension Plan. The accrued benefit actually received by Mr. Martinez is based on an average of his salary during the last five years of his employment, none of which occurred during the marriage. However, the years of his employment during the marriage contributed to his right to receive the increased accrued benefit because his pension payments would have been significantly smaller had he not worked during the years *77 when the community was in existence. Thus, the community has an interest in the whole of the accrued benefit. Mr. Martinez’s arguments on this issue are rejected.
Moreover, by Mr. Martinez’s own admission and vigorous argument, the original trial court judgment dividing the Lykes Pension Plan according to the Sims formula is a final | ajudgment. Nothing in the Sims decision allows a court to use any amount of money other than the employed spouse’s actual “annuity (or lump-sum payment)” as the third part of the Sims equation. The Sims case requires that the community portion of the pension plan be half of the employed spouse’s actual annuity. Mr. Martinez cannot argue that he is entitled to a “pure” application of the Sims formula for purposes of calculating the first portion of the formula, and then argue that he is entitled to a “modified” application of the Sims formula for purposes of determining the third portion of the formula. For that reason also, Mr. Martinez’s arguments on this issue have no merit.
Accordingly, the trial court judgment appealed in appeal number 94-CA-1805 is affirmed.

Interest

Appeal number 94-CA-1805 was consolidated with Mr. Martinez’s appeal number 94-CA-1806, in which Mr. Martinez contests a trial court judgment that denied his claim for interest on a lump-sum payment made by Ms. deMontluzin in settlement of the partition judgment. Mr. Martinez claims he is entitled to interest on the amount the parties agreed was owed that Ms. deMontluzin failed to timely tender.
The lump-sum payment was necessary because some of the partitioned community property had been sold or disposed of prior to the finalization of the judgment on the partition. Thus, counsel for the two parties engaged in a negotiation process to determine a fair market value to finalize the settlement. First, in April of 1990, Ms. deMont-luzin’s counsel sent a letter to Mr. Martinez’s counsel in which he calculated the amount Ms. deMontluzin owed Mr. Martinez as $64,-861.97 — $68,778.07 minus a set-off of $3,916.11 for unpaid alimony. Ms. deMont-luzin’s counsel enclosed a photocopy of a check for $64,861.97 along with that letter.
Mr. Martinez’s counsel responded by rejecting the proposed sum and suggesting that $95,000 plus a waiver of Ms. deMontluz-in’s right to a portion of Mr. Martinez’s pension plan would be an equitable settlement. Ms. deMontluzin’s counsel rejected that offer. On December 26, 1990, Mr. Martinez accepted the $64,861.97 originally offered by Ms. | ipdeMontluzin. Eventually, the trial court also determined that Ms. deMont-luzin owed Mr. Martinez the $3,916.11 she was claiming in set-off for past due alimony. That amount was paid on November 4, 1992. Thereafter, Mr. Martinez sought interest on the $64,861.97 by filing a “Petition for Damages for Delay in Performance.” Both parties filed motions for summary judgment. The trial court denied Mr. Martinez’s motion, granted Ms. deMontluzin’s motion, and dismissed the petition with prejudice. Mr. Martinez has appealed.
Mr. Martinez claims that he is owed interest on the $64,861.97 originally offered by Ms. deMontluzin because the parties agreed that that amount was owed and Ms. deMont-luzin failed to tender the agreed-upon amount as required by La.C.C. art. 1869, which provides as follows:
When the object of the performance is the delivery of a thing or a sum of money and the obligee, without justification, fails to accept the performance tendered by the obligor, the tender, followed by deposit to the order of the court, produces all the effects of a performance from the time the tender was made if declared valid by the court.
A valid tender is an offer to perform according to the nature of the obligation.
In finding that Mr. Martinez is not due interest under the facts of the instant case, the trial court found that “a sum certain,” which is “the nature of the obligation” in this case, had not been agreed on until Mr. Martinez accepted Ms. deMontluzin’s check. Because the “nature of the obligation” had not been determined, no obligation to tender arose under the terms of La.C.C. art. 1869. Even if a tender was required, the trial court found Ms. deMontluzin, the obligor, gave Mr. *78 Martinez, the obligee, notice that she was “ready to perform,” which has the same effect as a tender under the terms of La.C.C. art. 1870.
We find no error in the trial court judgment. The record shows that the parties in this case were engaged in negotiations to determine the amount owed to settle the community right up until the time Ms. de-Montluzin delivered the check to Ms. Martinez. Accordingly, the trial court judgment in appeal number 94-CA-1806 is affirmed.

AFFIRMED.

BYRNES, J., concurs with reasons.