943 So.2d 1198 (2006)
Sandra M. ANDERSON
v.
BOARD OF SUPERVISORS OF LOUISIANA STATE UNIVERSITY AND AGRICULTURAL AND MECHANICAL COLLEGE by and through the LOUISIANA STATE UNIVERSITY HEALTH SCIENCE CENTER.
No. 06-CA-153.
Court of Appeal of Louisiana, Fifth Circuit.
October 17, 2006.
*1199 Deborah E. Lavender, David C. Whitmore, Attorneys at Law, New Orleans, LA, for Plaintiff/Appellant.
Patricia S. LeBlanc, Kelly McCarthy Rabalais, Attorneys at Law, Metairie, LA, for Defendant/Appellee.
Panel composed of Judges THOMAS F. DALEY, WALTER J. ROTHSCHILD, and FREDERICKA HOMBERG WICKER.
WALTER J. ROTHSCHILD, Judge.
In this medical malpractice case, plaintiff, Sandra Anderson, appeals a jury verdict and trial court judgment in favor of defendant, Board of Supervisors of Louisiana State University and Agricultural and Mechanical College by and through the Louisiana State University Health Sciences Center ("LSU"). For the reasons which follow, we affirm.

FACTS AND PROCEDURAL HISTORY
On August 18, 1998, Sandra Anderson, who is a licensed practical nurse, underwent plastic surgery at Magnolia Surgical Facility. The doctors performing the surgery were Dr. Forrest Wall, who was a resident in the LSU plastic surgery department, and Dr. Walton Montegut, a physician in private practice who also served as a faculty member at LSU Medical School. Dr. Montegut performed a coronal forehead lift and a fat transfer to the upper and lower lips. Dr. Wall performed a full face lift and a neck lift, and he was supervised by Dr. Montegut *1200 during the surgery. As a result of these procedures, Ms. Anderson suffered nerve damage to her face, which causes hemifacial spasms.
A medical review panel was convened to consider Ms. Anderson's claims that the nerve injury to her face was caused by the negligence of Drs. Wall and Montegut. Ms. Anderson's primary claim was that she was not sufficiently informed of the risks of the procedures, i.e. she did not give an informed consent to these procedures. After considering the arguments of the parties, the medical review panel issued an opinion, finding that "[t]here is a question of fact as to whether or not the patient was pre-operatively informed of the potential of a facial nerve injury as a complication of facelift surgery."
On June 17, 2002, plaintiff filed this lawsuit against LSU for the actions of Drs. Wall and Montegut, asserting that both doctors deviated from the standard of care, failed to properly inform Ms. Anderson of known complications of the plastic surgery, and failed to obtain an informed consent for the plastic surgery procedures performed. Prior to trial, counsel for both parties signed a pre-trial order containing a stipulation that the only claim to be presented at trial was "whether Sandra Anderson was adequately consented regarding the risk of a rare but known complication of her surgery."
A jury trial was held on August 1, 2, and 3, 2005. At the conclusion of the trial, the jury found that the plaintiff did not prove by a preponderance of the evidence the existence of a material risk unknown to her. On August 10, 2005, in accordance with this finding, the trial judge signed a judgment dismissing plaintiff's claims against defendant, LSU. Plaintiff, Ms. Anderson, appeals.
DISCUSSION
In her first assignment of error, plaintiff argues that the trial court erred in granting defendant's Motion in Limine and ruling that plaintiff's counsel could not ask Dr. Montegut if he had passed the examination for board certification.[1] Apparently, defendant filed a Motion in Limine asking the trial court to exclude testimony concerning whether or not Dr. Montegut was board certified in plastic surgery at the time of plaintiff's surgery, arguing that it was not relevant to plaintiff's informed consent claim. Arguments on the Motion in Limine were heard just before the trial began. At the hearing, defendant argued that plaintiff's only purpose in asking if Dr. Montegut was board certified would be to prejudice the jury and to embarrass Dr. Montegut. Defendant further asserted that the jury had to assess credibility to determine whether or not Dr. Montegut informed plaintiff of the risks of surgery, and Dr. Montegut never lied about whether or not he was board certified, so this question was not relevant to credibility. Plaintiff responded that the issue of board certification is one that is asked of almost every medical expert who testifies in court and that the answer relates to whether or not Dr. Montegut was qualified to supervise Dr. Wall and whether or not he disclosed his education and experience to plaintiff.
After questioning plaintiff's counsel regarding whether or not she had proof that Dr. Montegut failed the board certification exam, the trial judge stated:

*1201 . . . . I will permit counsel to conduct an evidentiary hearing with the witness so that the facts may be established. Therefore, counsel will not be permitted to argue this before the jury nor engage in voir dire on that particular point because the matter has not been established sufficiently before the court to determine whether or not that is something which the jury will hear. And I state that because the representations in chambers were such that I was satisfied that this had, in fact, occurred and I'm not so at this point and therefore I will not permit it. I will allow the evidentiary hearing if counsel wishes to. (Emphasis added.)
At trial, plaintiff's counsel asked Dr. Montegut if he had failed the board certification examination. Defense counsel objected to the question, arguing that there had been no evidentiary hearing and thus, plaintiff could not question Dr. Montegut on this issue. The trial judge sustained the objection. Plaintiff's counsel then stated:
You know what, I'll just stay away from it. That's okay. I just won't even touch it again. . . .
On appeal, plaintiff argues that the trial court erred in granting the Motion in Limine on this issue, but defendant asserts that this issue cannot be reviewed on appeal because plaintiff did not make an objection for the record or request a proffer of evidence. We agree with defendant.
In order to preserve an evidentiary issue for appellate review, it is essential that the complaining party enter a contemporaneous objection to the evidence and state the reasons for the objection. Matthews v. Breaux, 04-958 (La.App. 5 Cir. 2/15/05), 896 So.2d 1146, 1150. The failure to make a contemporaneous objection in the trial court waives the right of a party to complain about the ruling on appeal. Hyland v. American Guarantee and Liability Insurance Company, 04-305 (La. App. 5 Cir. 9/28/04), 885 So.2d 30, 34.
In the present case, plaintiff's counsel did not request an evidentiary hearing prior to Dr. Montegut's testimony and did not make a contemporaneous objection when the trial judge sustained defendant's objection to her question regarding whether or not Dr. Montegut passed the examination for board certification. Rather, plaintiff's counsel simply stated, "That's okay," and "I'll just stay away from it." Accordingly, because plaintiff did not make a contemporaneous objection when the trial judge ruled that she could not question Dr. Montegut on this issue, we find that plaintiff has waived her right to contest this ruling on appeal. Thus, this assignment of error is without merit.
In her second assignment of error, plaintiff asserts that the trial court erred in granting defendant's Motion in Limine and excluding evidence which suggested that Dr. Montegut had exceeded the scope of informed consent by performing additional surgery on plaintiff. At the hearing on the Motion in Limine, plaintiff argued that the medical records reveal that Dr. Montegut performed an additional procedure on Ms. Anderson to which she had not consented and that this evidence is relevant to Dr. Montegut's credibility. Defendant responded that plaintiff should not be allowed to argue that Dr. Montegut exceeded the scope of plaintiff's consent by performing an additional surgical procedure, because this issue had never been presented to the medical review panel and the parties stipulated in their pre-trial order that the only claim to be presented at trial was whether or not plaintiff was adequately informed of the risk of a rare but known complication of surgery. The trial judge granted the Motion in Limine on *1202 this issue, finding that there was no evidence that the issue of exceeding consent was ever presented to the medical review panel and that the pre-trial order did not indicate that it was an issue for trial.
In a medical malpractice lawsuit, a patient is prohibited from asserting claims that have not been specifically raised in a complaint before the medical review panel. See Gele v. Binder, 05-121 (La.App. 5 Cir. 5/31/05), 904 So.2d 836, 837. In the instant case, the evidence does not establish that the medical review panel was presented with the issue of whether or not Dr. Montegut performed an additional procedure on plaintiff that exceeded her consent.
The trial court has great discretion when ruling on evidentiary matters, such as motions in limine. Heller v. Nobel Insurance Group, 00-261 (La.2/2/00), 753 So.2d 841; Scott v. Dauterive Hosp. Corp., 02-1364 (La.App. 3 Cir. 4/23/03), 851 So.2d 1152, 1164, writ denied, 03-2005 (La.10/31/03), 857 So.2d 487. Considering the record before us, we find that the trial court did not abuse its discretion by granting defendant's motion in limine, and this assignment of error is without merit.
In her third assignment of error, plaintiff argues that the jury erroneously concluded that she had failed to prove by a preponderance of the evidence the existence of a material risk unknown to her. She contends that facial nerve damage was a material risk that Dr. Montegut did not disclose to her and, although Dr. Montegut asserts that he did inform her of this risk, plaintiff argues that the evidence submitted at trial clearly contradicted Dr. Montegut's testimony. Defendant responds that the jury made a credibility call and chose to believe Dr. Montegut when he testified that he had informed Ms. Anderson of the possibility of facial nerve damage. Defendant contends that the jury's finding was reasonable and was not manifestly erroneous or clearly wrong.
It is well settled that a court of appeal may not set aside a jury's finding of fact in the absence of manifest error or unless it is clearly wrong. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989); Brandt v. Engle, 00-3416 (La.6/29/01), 791 So.2d 614, 621. Where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even if the appellate court believes that its inferences and evaluations are as reasonable. Id. Where there are two permissible views of the evidence, the factfinder's choice cannot be manifestly erroneous or clearly wrong. Felix v. Briggs of Oakwood, Inc., 01-781 (La.App. 5 Cir. 11/27/01), 803 So.2d 989, 990. A court of appeal may find manifest error only where the objective evidence so contradicts a witness' story or the story itself is so internally inconsistent or implausible that a reasonable factfinder would not credit a witness' testimony. Robinson v. Doe, 02-258 (La.App. 5 Cir. 9/30/02), 829 So.2d 577, 579.
In reviewing a jury's determination regarding whether or not a doctor obtained the patient's informed consent, an appellate court should focus on the duty of the doctor to provide material information to the patient under the circumstances of the particular case. Thibodeaux v. Jurgelsky, 04-2004 (La.3/11/05), 898 So.2d 299, 316. LSA-R.S. 40:1299.40(C) does not require that the information necessary to obtain a patient's informed consent be written. The information given to a patient about potential risk may be given verbally. See Siliezar v. East Jefferson General Hospital, 04-939 (La.App. 5 Cir. 1/11/05), 894 So.2d 373, 379, wherein this court stated that the failure to obtain a written consent is not malpractice per se and that a patient's consent may be verbal.
*1203 In the present case, plaintiff signed two consent forms and Dr. Montegut asserts that he informed plaintiff of specific risks of the surgery verbally. The two consent forms signed by plaintiff list general risks associated with surgery and anesthesia, such as death, paralysis, brain damage, and disfiguring scars, but neither form sets forth nerve damage as a material risk. The consent forms signed by plaintiff also indicate:
This operation has been explained to me. Alternate methods of treatment, if any, have also been explained to me, as have the advantages and disadvantages of each. I am advised that though good results are expected, the possibility and nature of complications cannot be accurately anticipated and that, therefore, there can be no guarantee as expressed or implied either as to the result of surgery or as to cure.
At trial, plaintiff testified that she did not realize prior to surgery that facial nerve damage was a material risk. She stated that neither Dr. Montegut nor Dr. Wall ever told her that nerve damage could possibly result from her surgery. In fact, she stated that Dr. Montegut never discussed any possible complications of the procedure with her. Plaintiff argues that the Pre-Op Facial Sheet used by Dr. Montegut lists nerve injury as a risk of the surgery, but she did not receive a copy of this form. She also asserts that this form has spaces for the doctor to check off when he informs the patient of a particular risk and spaces for the patient to initial the form, but Dr. Montegut did not check off the risks listed, so this shows that he did not inform her of these risks. She further stated that the nurse rushed her into signing the written consent form because she was in a hurry that day. Ms. Anderson also testified that she watched a video at Magnolia Surgery Facility about face-lift procedures, but this video did not contain information regarding possible material risks, such as nerve injury.
Dr. Montegut testified that he understands it is the duty of the doctor who is going to perform a procedure to provide the patient with the information necessary to obtain her informed consent. He stated that he is confident that he told plaintiff of the risks associated with facial plastic surgery, including facial nerve damage, because he always discussed this with patients having this surgery. Dr. Montegut testified that the Pre-Op Facial Sheet is a document that he uses for his own notes, that he does not always check things on the sheet as he discusses them, and that he does not give a copy of this document to the patient.
Rebecca Famularo, a nurse at Magnolia Surgery Facility who worked with Dr. Montegut, testified that she was often in the office with Dr. Montegut when he consulted with patients about surgery. She stated that Dr. Montegut was always very thorough, would answer questions, explain the procedures, and draw pictures. She testified that Dr. Montegut verbally informed patients of all of the risks on his Pre-Op Facial Sheet every time, even if he did not specifically indicate on the form that he had done so. She further stated that the Pre-Op Facial Sheet was just a form that Dr. Montegut used for himself and that patients never received this form.
Ms. Famularo also testified that her handwriting is on plaintiff's written consent forms, which indicates that she was the nurse who filled out the form and presented it to plaintiff. She stated that she goes over the form with patients only after they have discussed the procedures and the risks with the doctor and, if the patient has questions, she refers them back to the doctor. She did not have an independent recollection of meeting with *1204 plaintiff, but she stated that she would never rush a patient into signing a consent form because she was in a hurry.
Dr. Forrest Wall testified that he worked with Dr. Montegut on several occasions and that Dr. Montegut supervised the surgery that he performed on plaintiff. He stated that Dr. Montegut always thoroughly explained the risks and benefits of the patient's surgery. He testified that facial nerve injury is a complication of cosmetic plastic surgery and he heard Dr. Montegut regularly discuss this risk and others with every patient. He stated that there was no doubt in his mind that Dr. Montegut discussed the risk of facial nerve injury with plaintiff.
The jury was presented with conflicting testimony and had to make a determination of which witnesses they believed to be most credible. Apparently, the jury chose to believe Dr. Montegut when he indicated that he had verbally informed Ms. Anderson of the risk of facial nerve injury, and they did not believe Ms. Anderson when she testified that she had never been informed of this risk. Considering the testimony and the evidence in this case, we find that a reasonable factual basis exists to support the jury's finding that Ms. Anderson did not prove by a preponderance of the evidence a material risk that was unknown to her. Accordingly, we cannot say that the jury's decision was manifestly erroneous or clearly wrong, and this assignment of error is without merit.
DECREE
For the reasons set forth above, we affirm the judgment of the trial court, dismissing plaintiff's claims against defendant.
AFFIRMED.
NOTES
[1] The Motion in Limine is not contained in the appellate record. However, the record includes a transcript from the hearing on this motion, which sets forth the parties' arguments on this issue. We note that the technical wording of the motion is not relevant to the issue on appeal.