JUDE G. GRAVOIS, Judge.
12PIaintiff, Bobbie Christine Murphy, tripped and fell on an exterior staircase at the “Frenchmen’s Creek” apartment complex in Metairie, Louisiana, in May of 2005, sustaining serious injuries to her right ankle. She sued the apartment complex builder/owner, 1st Lake Properties, Inc., Favrot & Shane Properties, and Lake Development Construction, Inc.[1] (collectively “F & S”), alleging that the stairs were defective in that the steps were irregularly and improperly spaced and out of compliance with applicable building codes, thus creating a hazard to all users of the stairway. G. Wilson Construction Company, Inc. (“Wilson”), the construction firm who had previously removed and replaced the treads of the stairs in question in 2003, was added as a defendant in a supplemental and amending petition.
In June of 2011, after a three-day jury trial, a verdict was returned in favor of defendants, finding that the stairs were not defective at the time of plaintiffs |saccident.[2] Plaintiff filed a motion for judgment notwithstanding the verdict and alternatively for- a new trial, which was denied. This appeal followed.
On appeal, plaintiff asserts various assignments of error.[3] First, in Part I of her brief, plaintiff argues that the evidence clearly showed that the staircase in question was defective due to the negligence of F & S, and further that the opinion of plaintiffs expert witness, an architect, that the stairs were defective, was unopposed. Accordingly, she argues, the jury erred in finding that the staircase was not defective and that F & S was not liable for plaintiffs injury claims.
In Part II of her brief, plaintiff argues various trial court errors that she claims entitles her to a de novo review of the evidence by this Court. First, plaintiff argues that twelve different exhibits, used to impeach the testimony of plaintiffs witness, Gregory Avery, were improperly admitted. Second, plaintiff argues that the trial court improperly denied her the right to call two witnesses whom she asserts were listed on her pretrial order. Third, plaintiff argues that the trial court improperly heard and granted defendants’ motions in limine prior to trial, limiting plaintiffs introduction of certain medical evidence and testimony. Fourth, plaintiff argues that the trial court improperly *968 failed to control defendants’ closing arguments, in which defense counsel allegedly made prejudicial and inflammatory comments.[4]
In Part III of her brief, plaintiff argues that defendants improperly presented various non-certified exhibits. She also argues that defendants improperly [/‘bifurcated” Exhibit D-l, the F & S Incident Report, separating and failing to introduce the photographs allegedly associated with the report. She further argues that Exhibit D-14, a previous lawsuit allegedly filed by plaintiff concerning another accident, was also improperly introduced.
In her brief, plaintiff also argues that the trial court erred in granting defendants’ motion in limine denying her request to present evidence that she suffered from a metal allergy occasioned by the hardware in her ankle.[5] This argument will be addressed in Part IV of this opinion.
For the following reasons, finding no merit to any of plaintiffs arguments, we affirm the judgment of the trial court.

FACTS

On May 9, 2005, plaintiff, Bobbie Christine Murphy, visited a friend, Judy Norris, at the Frenchmen’s Creek apartment complex in Metairie, Louisiana. Ms. Norris lived on the third floor of Building 4. Plaintiff left Ms. Norris’s apartment on the third floor and then tripped and fell as she descended the exterior staircase between the third and second floors. Ms. Norris apparently witnessed plaintiffs fall. At the time, plaintiff was wearing wedge-type flip-flops, approximately 2½ inches in height. She was also carrying her purse, a laptop computer, and a container of cheesecake slices Ms. Norris had given her.
Plaintiff was treated that evening for injuries received in her fall at East Jefferson After Hours Clinic, an urgent care facility in Metairie, Louisiana. She presented the next day to Lakeview Regional Hospital’s emergency room in Covington. She was admitted with a broken ankle. Surgery was performed on her ankle, with a plate and screws being inserted to stabilize the joint. Plaintiff | ^thereafter filed this lawsuit against defendants, alleging that the staircase was defective, which she alleged was the proximate cause of her accident.

PART I: Liability of F & S

In the first section of her brief, plaintiff argues that the jury erred in its finding of fact that the staircase in question was not defective.
The apartment complex consisted of several three-story buildings with apartments on each floor that were accessed by exteri- or staircases, there being no elevators in the complex. The exterior staircase near Ms. Norris’s apartment, similar in structure to the ones serving the other buildings, consisted of a staircase leading down from the third floor landing to an interim landing between the third and second floors, with a second staircase then descending from the interim landing to the second floor landing. Plaintiff and Mr. Avery, her flaneé of eleven years and sometimes attorney of record in this case, maintained that plaintiff tripped after leaving the interim landing and fell to the *969 second floor landing. The F & S Incident Report, however, describes plaintiff as having fallen from the third floor landing to the interim landing, as per information supplied by Ms. Norris, apparently the only eyewitness to the accident.
The record shows that in July of 2003, the owners of the Frenchmen’s Creek apartment complex sought bids from carpentry contractors, as part of its ongoing building maintenance program, to remove and replace the wooden treads of the complex’s exterior staircases with concrete ones. Defendant Wilson was awarded the contract. F & S supplied all of the materials for the job. Because the job did not include rebuilding the stairs, but merely involved replacing the worn wooden treads with concrete ones, which were more durable, Wilson was not given any blueprints or other designs to follow. Wilson’s president, Mr. Glenn Wilson, testified that he placed the new concrete treads in exactly the same locations where Rthe wooden treads had been placed when the complex was built in 1976, but hung new brackets to hold the new concrete treads up because the concrete treads were thicker than the wooden treads. He was not asked to alter the stairs in any other way or to address any building code issues if found. Mr. Wilson admitted that some of the staircases he worked on in the complex appeared to be out of compliance with applicable building codes in that there were differences between the heights of the stair risers (the distance between the steps) in excess of what applicable codes allowed.
Mr. Victor Bedikian, who was accepted by the court as an expert in architecture, codes, and standards, testified that on April 17, 2006, he performed an inspection of the staircase leading to Ms. Norris’s apartment. He was told by Mr. Avery[6] that the accident occurred at the interim landing between the third and second floors as plaintiff descended from the interim landing to the second floor landing. He measured the stairs leading down from this landing to the second floor landing and found that the riser heights differed significantly from each other, which he opined violated applicable building codes, creating a safety hazard. Mr. Bedikian was assisted in his measurements by Mr. Avery, who made notes of the measurements taken by Mr. Bedikian.[7]
Mr. Bedikian also measured the stairs going down from the third floor landing to the interim landing, which is where Ms. Norris, according to the F & S Incident Report, indicated that the accident occurred. He testified that this section of the staircase was “fine”, with very little variation between the tread heights, and accordingly was code-compliant. He agreed with defense counsel that he did not know what caused plaintiffs accident and could not say whether the stairs had caused her accident.
|7As noted, the jury was presented with plaintiffs version of the accident, which she said took place on the section of the stairs leading from the interim landing to the second floor. However, plaintiffs version of the accident was contradicted by the F & S Incident Report, made on May 10, 2005, the day after the accident, which included information obtained from Ms. Norris, who apparently witnessed the accident.[8] The Incident Report states, in pertinent part:
*970 Per resident of Apt. 317, Judy Norris: Kristin (sic) Murphy, guest, was coming off the 3rd floor landing and fell down stairs and landed at the intermediate landing between the 3rd and 2nd floor. (Emphasis added.)
The Incident Report further describes the location of the accident as: “Building 4, fell from the third floor landing in the middle stairwell coming from apartment 317, to the 2nd landing from the top floor.” Weather conditions were described in the Incident Report as being “Damp.” Thus, according to the Incident Report, plaintiff tripped and fell as she left the third floor landing to descend the stairs leading to the interim landing. These stairs, according to Mr. Bedikian, as noted above, were in compliance with applicable building codes.[9] The Incident Report was introduced into evidence without objection.
Additionally, the emergency room notes made by Dr. Jay Desalvo, who treated plaintiff in Covington the day after the accident, were also introduced into evidence without objection, and reported that plaintiff told Dr. Desalvo that the accident was “definitely as a result of a slip and fall as a result of wearing flip-flops on a wet surface.”[10] The flip-flops plaintiff wore that day, which were also introduced into evidence, were foam wedge-type flip-flops, with a heel height of approximately 2½ inches. When confronted, plaintiff testified that she did not | smake this statement to Dr. Desalvo, but could not otherwise explain why he would have recorded it in his notes.
Mr. Avery and plaintiff both testified that plaintiff was not clumsy, which was one of the reasons Mr. Avery said he was very interested in inspecting the stairs shortly after plaintiffs accident. He said he wanted to understand what made plaintiff fall. However, plaintiffs medical records showed that in the year or two prior to this accident, she broke toes on both of her feet in separate tripping accidents, which she attributed to the shoes she wore when she tripped.[11]
It is well settled that a court of appeal may not set aside a trial court’s or jury’s finding of fact in the absence of manifest error or unless it is clearly wrong. To reverse a fact-finder’s determination, the appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and that the record establishes that the finding is clearly wrong. Where the jury’s findings are reasonable, in light of the record viewed in its entirety, the court of appeal may not reverse. Even where the court of appeal is convinced that it would have weighed the evidence differently to reach a different result, reversal of the trial court is improper unless the trial court’s ruling is manifestly erroneous or clearly wrong. Rabalais v. Nash, 06-0999 (La.3/9/07), 952 So.2d 653, 657 (internal citations omitted).
Upon review, we find no manifest error in the jury’s conclusion, given the evidence introduced at trial, that the stairs in question were not defective at the time of plaintiffs accident. It is of no moment that defendants did not offer expert testimony to refute Mr. Bedikian’s testimony, as plaintiff argues in brief. Mr. Bedikian’s testimony actually in part supports the jury’s conclusion. He testified that the portion of the stairs where the accident *971 occurred (according to Ms. Norris) |9was compliant with the applicable building codes, and further, he could not say with certainty exactly what caused plaintiffs accident or that the stairs caused her accident. Further, the jury was presented with a conflicting cause of the accident in plaintiffs statement contained in Dr. Des-alvo’s notes. The jury also heard that plaintiff was carrying at least three items (her purse, her laptop, and the container with the cheesecake) as she began to descend the stairs, which were wet, in approximately 2½-⅛⅛ wedge-type flip-flops, which according to her statement contained in Dr. Desalvo’s notes, resulted in her fall.
Upon review, in light of the record before us viewed in its entirety, we find that the jury’s finding that the stairs were not defective at the time of plaintiffs accident is reasonable and not manifestly erroneous. Accordingly, this assignment of error is without merit.

PART II: Trial Court Errors

In the second section of her brief, plaintiff alleges various errors of the trial court which she argues entitles her to a de novo review of the evidence by this Court. It is well settled that a court of appeal may not set aside a trial court’s or a jury’s finding of fact in the absence of “manifest error” or unless it is “clearly wrong.” Florreich v. Entergy Corp., 09-414 (La.App. 5 Cir. 2/23/10), 32 So.3d 965, 968, writ denied, 10-1057 (La.9/3/10), 44 So.3d 691. However, where one or more trial court legal errors interdict the fact-finding process, the manifest error standard is no longer applicable, and if the record is otherwise complete, the appellate court should make its own independent de novo review of the record and determine a preponderance of the evidence. Id. A legal error occurs when a trial court applies incorrect principles of law and such errors are prejudicial. Id. Legal errors are prejudicial when they materially affect the outcome and deprive a party of substantial rights. Id.
hnWe will now review the substance of the trial court errors alleged by plaintiff.

Impeachment evidence

First, plaintiff argues that twelve different documentary exhibits were improperly introduced to impeach the testimony of plaintiffs witness, Mr. Avery, on the basis that proper foundations were not laid according to La. C.E. art. 613 for the exhibits’ introduction.[12] She argues that Article 613 allows the introduction of extrinsic evidence of bias and inconsistent statements relating to prior matters to attack the credibility of a witness only if the witness denies the prior matter. In other words, the extrinsic evidence is not allowed to be admitted into evidence if the witness “distinctly” admits the prior matter. Plaintiff argues that, because Mr. Avery admitted the substance of the exhibits in question, the foundation required by Article 613 for these exhibits to be properly admitted into evidence was not laid.
For an issue to be preserved for review, a party must make a timely objection and state the specific ground for the objection. Failure to contemporaneously object constitutes a waiver of the right to complain on appeal. Further, the reasons for the objection must be brought to the attention of the trial court to allow it the opportunity to make the proper ruling and prevent or cure any error. Willis v. Noble *972 Drilling (US), Inc., 11-598 (La.App. 5 Cir. 11/13/12), 105 So.3d 828, 835-36. On appeal, an appellant is limited to the grounds for objection that he articulated in the trial court and a new basis for the objection may not be raised for the first time on appeal. State v. Grimes, 09-2 (La.App. 5 Cir. 5/26/09), 16 So.3d 418, 424.
In At trial, during the cross-examination of Mr. Avery by defense counsel, plaintiffs counsel objected to the introduction of the complained of exhibits (D-l through D-12) as they were respectively being offered to impeach Mr. Avery’s credibility. The record clearly shows that plaintiffs counsel objected to these exhibits only on the basis of relevancy, arguing that because Mr. Avery was not a party to the litigation, nor a witness to the accident, these documents were irrelevant. Plaintiff did not object to the introduction of these exhibits on the basis that foundations had not been properly laid therefor. Accordingly, this issue was not preserved for appellate review.
Concerning her relevancy objection, plaintiff argues that these exhibits were not relevant to impeach Mr. Avery’s credibility because he was not a party to the litigation, nor a witness to the accident. La. C.E. art. 607 et seq., however, which govern the introduction of impeachment evidence, makes it clear that the credibility of all witnesses, not merely “party” witnesses, may be attacked by any party. Upon review, we find that Mr. Avery’s credibility was obviously extremely relevant to this case, as he was plaintiffs fiancé with whom she lived at the time of the accident and since. He participated in finding her medical care, caring for her injuries, discovery, and inspection of the stairs. He also performed as her attorney of record at various times during the pen-dency of the case. In brief, as at trial, plaintiff only offers the general claim that none of the exhibits in question were relevant to impeach Mr. Avery because he was not a party to the litigation. She does not offer any specific arguments as to why or how each particular exhibit was not relevant. Thus, this assignment of error is without merit.
| 12.Denial of right to call two witnesses
Plaintiff also argues that the trial court improperly denied her the right to call two St. Tammany Parish Sheriffs deputies who she claims were listed in her pretrial order.
The record shows that the trial court ruled that plaintiff would be allowed to call these two witnesses as rebuttal witnesses, but not in her case-in-chief, because not only was there some uncertainty as to whether they were listed on the pretrial order, but also because all indications were at the time that they were being called as rebuttal witnesses. Plaintiffs counsel did not object to the trial court’s ruling, and actually agreed to the ruling.[13] Thereafter, plaintiff did not call these witnesses in rebuttal, nor did she at any time seek to proffer their testimony in order to preserve it for appellate review.[14] According *973 ly, this assignment of error is without merit.
Motions in limine
Plaintiff next argues that the trial court improperly heard and granted defendants’ motions in limine prior to trial, limiting plaintiff’s introduction of certain medical evidence and testimony.
Plaintiff’s argument in brief points to the trial court’s ruling on defendants’ motion in limine made on the morning of the first day of trial pertaining to the medical records and the scope of the testimonies of the doctors who had, at various 11 ¡¡times, treated plaintiff following the accident.[15] A close review of the transcript of the motion hearing shows that plaintiffs counsel did not object to hearing the motions in limine, nor to the rulings on the motions in limine, and in fact agreed to the rulings. Accordingly, because the issue was not preserved for appellate review by contemporaneous objection, this assignment of error is without merit.
In this section of her brief, plaintiff also argues that defendants, who had prepared an exhibit book containing all of plaintiffs medical records (identified as exhibits Nos. J-l through J-12, inclusive) and which exhibit book was clearly introduced as a joint exhibit, improperly “time selected” those medical records, which caused prejudice to plaintiff. Specifically, plaintiff appears to argue that while inclusion of certain medical records were limited by date (as per the motion in limine noted above), plaintiffs psychiatric records from 2011 were introduced without the same date restriction as the other medical records. Plaintiff appears to argue that defense counsel may have violated ethical rules in the preparation of the joint medical exhibits.
A review of the transcript of the hearing on the motion in limine regarding the dates of the other medical records, to which plaintiff did not object as noted above, shows that the medical records contained in the exhibit book were restricted to certain time periods because: (1) plaintiff did not furnish those more recent “updated for trial” medical records to defendants within the discovery deadlines; and (2) certain doctors were not going to testify. As noted above, plaintiff did not object to the ruling on the motions in limine and in fact agreed to the rulings. The failure to make a contemporaneous objection in the trial court waives the right of a party to complain about the ruling on appeal. Anderson v. Bd. of Sup’rs of Louisiana State Univ. & Agr. & Meek Coll, ex rel. Louisiana State Univ. Health Sci. Ctr., 06-153 (La.App. 5 Cir. 10/17/06), 943 So.2d 1198, 1201.
We further note that the psychiatric records in question were from 2010 and were not involved in the motion in limine. Further, and most importantly, plaintiff failed to object to the introduction of the joint medical records themselves. Accordingly, this assignment of error is without merit.

Closing arguments

Plaintiff also argues that the trial court failed to control defendants’ closing arguments, in which plaintiff complains that defense counsel made prejudicial and inflammatory comments, many times characterizing plaintiff and Mr. Avery as “liars.” The record reveals that at no time during closing arguments did plaintiffs *974 counsel object to any arguments or statements made by defense counsel. As in the case of evidentiary matters, objections to statements made during closing argument must be made contemporaneously. Failure to lodge a contemporaneous objection in the trial court waives the right to complain on appeal. Karagiannopoulos v. State Farm Fire & Casualty Co., 94-1048 (La.App. 5 Cir. 11/10/99), 752 So.2d 202, 209. Because this issue was not preserved for appellate review, the assignment of error is without merit.

Conclusion

For the foregoing reasons, we find no merit to plaintiffs claim that the trial court applied incorrect principals of law as to the issues reviewed above and thus committed prejudicial legal errors. Accordingly, plaintiff is not entitled to a de novo review of the evidence. Further, the trial court was not manifestly erroneous in its rulings reviewed above. Accordingly, these assignments of error are without merit.
| IMPART III: Improper Introduction of Exhibits
Plaintiff next argues that defendants improperly “bifurcated” Exhibit D-l (F & S’s Incident Report), separating the Incident Report from the photographs of the staircase associated therewith. She also argues that defendants introduced several “non-certified” exhibits (identified as Exhibits D-2, D-B, D-4, D-10, and D-14). She also argues other reasons why Exhibit D-14, a previous lawsuit allegedly filed by plaintiff concerning another accident, was improperly introduced.
The record reflects that at no time did plaintiffs counsel object to the introduetion of Exhibit D-l. Accordingly, this issue was not preserved for appellate review.
Plaintiff also argues that Exhibits D-2, D-3, D-4, D-10, and D-14 were not “certified” copies. Plaintiff appears to argue that the exhibits were not authentic because they were not certified copies. Counsel stated that this discovery was made while counsel was preparing plaintiffs appellate brief in this matter. Plaintiff argues that defense counsel misled the court about the exhibits being certified copies, in violation of the Code of Civil Procedure and the Rules of Professional Conduct.
The record reflects that plaintiff failed to object to the introduction of these exhibits at trial on this basis. Further, Mr. Avery and plaintiff, the witnesses under whose testimony these exhibits were introduced, identified the respective exhibits before they were introduced, thus sufficiently authenticating them as per La. C.E. art. 901(B)(1).[16]
Plaintiff also argues that Exhibit D-14, a previous lawsuit allegedly filed by plaintiff concerning another accident, was improperly admitted to impeach | lfiplaintiffs testimony. Plaintiffs counsel objected to this exhibit on the basis of relevancy. However, as noted above, La. C.E. art. 607 et seq., allow the credibility of a witness to be attacked by any party. This is especially true with respect to a “party” witness. And as further noted above, La. C.E. art. 618 allows credibility to be attacked through the use of documentation, as long as a proper foundation is laid therefor. Here, again, plaintiff did not object to the introduction of this exhibit on the basis that a proper foundation *975 had not been properly laid for its introduction. Hence, that objection was waived. Further, upon review, we find that introduction of this exhibit, an alleged previous lawsuit involving plaintiff that plaintiff originally denied having any knowledge of, was entirely relevant and proper for impeachment purposes.
This assignment of error is without merit.

PART IV: Motion in limine Regarding Alleged Metal Allergy

Plaintiff also argues in brief that defendant’s motion in limine to exclude evidence regarding plaintiffs alleged metal allergy was improperly granted. For the following reasons, we find no abuse of the trial court’s discretion in granting defendant’s motion.
The record shows that plaintiff was hospitalized in an in-patient psychiatric facility in June of 2010 following an incident between her and Mr. Avery at their home that occurred after plaintiff cut herself allegedly in an attempt to remove the hardware from her ankle. Defendants sought discovery of the psychiatric records, which plaintiff was ordered to produce to defendants following the grant of a motion to compel filed by defendants on February 28, 2011. Previously, after she hurt her ankle but prior to her psychiatric hospitalization, plaintiff had been treated by a neuropsychologist, Dr. Andrews, for depression and other symptoms resembling post-traumatic stress disorder. However, after her June 2010117psychiatric hospitalization, plaintiff sought another explanation for her symptoms of depression and post-traumatic stress, which she felt might be caused by a sensitivity to the metal in the surgical implants, alleged to be titanium, that remained in her ankle. On March 2, 2011, plaintiffs blood was drawn and was sent to a laboratory in Wisconsin to be tested in the Memory Lymphocyte ImmunoStimulation Assay (“MELISA”) process for allergy sensitivity to various metals.
Plaintiff first presented the issue of her alleged metal sensitivity to the trial court on March 24, 2011, when she filed a supplementary motion for continuance of trial, which was set for May 16, 2011. Plaintiff argued that she could not have discovered the cause of her symptoms of depression and accompanying physical problems earlier in the litigation because her entire file was in the hands of her previous counsel until January of 2011, when her counsel withdrew and gave her file to Mr. Avery, who enrolled for a short period of time as her counsel of record. New trial counsel did not enroll until March 28, 2011. On that same day, the trial court issued a pretrial order, setting trial for June 13, 2011, granting plaintiff an approximately thirty-day continuance of the trial.[17]
Defendants filed their motion in limine on April 18, 2011, seeking an order excluding plaintiff from presenting any evidence at trial of her alleged metal allergy or the results of her MELISA blood test on the grounds that such claim was made more than ten months after expiration of discov *976 ery deadlines and also because plaintiff would not be able to present qualified expert testimony at the hearing upon which to show that this evidence was reliable and relevant.
11KThe hearing on this motion in limine took place on June 1, 2011, two weeks prior to trial. Defense counsel argued that the MELISA blood test was a new methodology and neither it nor its scientific conclusion had previously been supported by any reliable expert testimony or opinion. Plaintiffs counsel suggested that he be allowed to conduct a Daubert[18] hearing prior to trial, to which defendants objected on the basis of timeliness. Plaintiff had no experts present at the hearing on the motion in limine. When asked by the court, plaintiffs counsel stated that if he would be allowed to conduct a Daubert hearing, he would call three of plaintiffs current treating physicians to testify regarding the MELISA blood test: her neu-ropsychologist, her psychiatrist, and her internal medicine doctor.
Defendants objected on the basis that none of plaintiffs treating physicians who would testify were specialists or experts in allergies or immune disorders, or in the MELISA test and its methodology. The trial court granted defendants’ motion on the basis of the lack of timeliness of the claim and also on the lack of proper experts to testify regarding the reliability of the MELISA test. Plaintiff noted her objection to the ruling, but did not seek to proffer any evidence or testimony from any experts regarding the MELISA test.[19]
Upon review, we find no abuse of discretion in the trial court’s ruling on this motion in limine. The trial court has great discretion when ruling on evidentiary ma1> ters, such as motions in limine. Anderson v. Bd. of Sup’rs of Louisiana State Univ. & Agr. & Mech. Coll. ex rel. Louisiana State Univ. Health Sci. Ctr., supra, 943 So.2d at 1202. This new claim arose well after the close of discovery deadlines and almost six years following the accident.
| ^Further, the trial court was well within its discretion to deny plaintiffs request for a Daubert hearing on the basis that the experts plaintiff indicated she would call to testify at this hearing were not shown to be qualified experts in the reliability of the methodology and the science behind the MELISA test. Daubert’s general gatekeeping function is to ensure that any and all scientific testimony or evidence admitted is not only relevant, but also reliable. State v. Lamonica, 09-1366 (La.App. 1 Cir. 7/29/10), 44 So.3d 895, writ denied, 10-2135 (La.2/18/11), 57 So.3d 331. The purpose of a Daubert hearing is to determine the reliability of an expert’s methodology. Id. Plaintiffs treating physicians were not shown to be experts themselves in this particular medical field or with the MELISA test. Accordingly, we find no error in this trial court ruling.
This assignment of error is without merit.

CONCLUSION

For the foregoing reasons, we find no merit to plaintiffs arguments, and thus affirm the judgment in favor of defen *977 dants. All costs of this appeal are assessed to plaintiff.

AFFIRMED

. 1st Lake Properties, Inc. and Favrot & Shane Properties were named as defendants in plaintiffs original petition for damages. Lake Development Construction, Inc. was added as a defendant in a supplemental and amending petition for damages.

. Because the jury answered "no” to this, the first question on the jury verdict form, the jury was not required to answer any other questions on the form.

. Plaintiff's brief contains a section that lists nine "assignments of error”. Immediately following is a section that lists thirteen "issues for review”, which do not correspond directly or exactly to the assignments of error. The brief’s arguments are not organized to correspond to either the assignments of error or the issues for review. Accordingly, plaintiff’s arguments discussed in this opinion correspond to the organization of the body of plaintiff’s brief and the arguments actually presented therein. Arguments made in the "assignments of error” section or in the "issues for review” section of plaintiff’s brief that are not briefed in the body of the brief are considered abandoned, Uniform Rules, Courts of Appeal, Rule 2-12.4, and will not be addressed herein. For example, plaintiff assigns as error, yet fails to brief, the trial court’s denial of her post-trial motions for judgment notwithstanding the verdict and for a new trial. Accordingly, this assignment is considered abandoned.

. This section of plaintiff's brief is actually numbered "section 6”; there are no sections 4 or 5 contained in this part of plaintiff’s brief.

. This argument is made within plaintiff’s "Statement of the Case” section of her brief. As part of this argument, plaintiff requests that this Court remand the matter for further testimony on this issue.

. Mr. Bedikian testified that he did not meet with plaintiff herself until the day of trial.

. A defense counsel representative was also present but did not participate in the inspection.

.Ms. Norris did not testify at the trial.

. Evidence was also introduced that there was no other reported accident on this staircase in the history of the apartment complex.

. Dr. Desalvo did not testify at the trial.

.Plaintiff testified that she wore the same pair of shoes in the two prior accidents where she broke her toes, but the pair she wore to Ms. Norris's apartment was a different pair.

. La. C.E. art. 613 provides: "Except as the interests of justice otherwise require, extrinsic evidence of bias, interest, or corruption, prior inconsistent statements, conviction of crime, or defects of capacity is admissible after the proponent has first fairly directed the witness' attention to the statement, act, or matter alleged, and the witness has been given the opportunity to admit the fact and has failed distinctly to do so.”

. The trial court’s ruling on this issue was as follows: "If the trial moves on and the Court hears, either in cross-examination of witnesses or in the defense case in proper that would make it appropriate to call them as rebuttal witnesses, the Court will allow you to do that whether they were on the witness list or not.” Plaintiff's counsel responded thereto: "Very good."

. In brief, plaintiff appears to claim that this issue was raised in a pretrial motion in limine that pertained to the admissibility of certain medical evidence. However, the ruling that plaintiff would be allowed to call the two officers as rebuttal witnesses, and to which plaintiff agreed, came on the first day of trial after several witnesses had already testified. The motion in limine was heard prior to the start of the trial. During that hearing, which *973 concerned the admissibility of the reports and testimony of plaintiff’s treating physicians, plaintiff requested that she be able to introduce the police officers' report. The trial court did not rule on that request.

. This hearing is distinct from the hearing on the motion in limine concerning evidence of plaintiff’s alleged metal allergy.

. La. C.E. art. 901(B)(1) provides: "By way of illustration only, and not by way of limitation, the following are examples of authentication or identification conforming with the requirements of this Article: Testimony that a matter is what it is claimed to be.” (Headings omitted.)

. In her brief, plaintiff also peripherally complains that the trial court improperly continued the trial for only 28 days, from May 16, 2011 to June 11, 2011, arguing that she needed more time before trial to pursue this alleged new damages claim. A trial court is vested with wide discretion in the control of its docket, in case management, and in determining whether a motion for continuance should be granted. A decision on a motion for continuance will not be disturbed on appeal absent a clear abuse of that discretion. La. C.C.P. art. 1601. Krepps v. Hindelang, 97-980, 97-1034 (La.App. 5 Cir. 4/15/98), 713 So.2d 519, 527. Upon review, we find no abuse of the trial court’s discretion in its ruling on plaintiff's motion for continuance.

. Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

. Plaintiff filed a writ application to this Court, seeking review of the trial court’s ruling granting the motion in limine. This Court denied the writ application on the showing made, finding no abuse of discretion. Murphy v. Favrot & Shane Properties, Inc., et al, 11-600 (La.App. 5 Cir. 6/10/11) (unpublished writ disposition).