MARSTILLER, J.
By petition for review,[1] Ragu P. Nath, A.P., asks this court to quash an Emergency Suspension Order (“ESO”) issued by the Department of Health (“Department”) suspending his license to practice acupuncture in Florida. We conclude that the Department’s factual findings sufficiently demonstrate immediate harm to the public health, safety, or welfare, and that the conduct alleged is likely to recur. However, we find the Department failed to demonstrate that the action taken — license suspension — was necessary to address the particular harm alleged.
In the ESO under review, the Department found that Nath had engaged in inappropriate sexual conduct with two female patients during treatment sessions, that the patients did not consent to the conduct, and that the massage technique Nath claimed he was performing did not necessitate touching a patient’s breasts or vaginal area as had allegedly occurred. The Department’s factual findings describing the misconduct are specific and detailed; we need not reiterate them here.
The Department concluded that Nath’s misconduct violates sections 456.072(1)(v) *1275 (engaging in sexual misconduct with a patient), 457.109(1)(j) (exercising influence within the acupuncturist-patient relationship to engage the patient in sexual activity), and 457.109(1)(p) (gross or repeated malpractice), Florida Statutes, and subjects Nath’s license to discipline, including suspension. The Department concluded further that:
7. Section 120.60(6), Florida Statutes (2011), authorizes the State Surgeon General to summarily suspend an acupuncturist’s license upon a finding that the acupuncturist presents an immediate, serious danger to the public health, safety or welfare.
8. Mr. Nath violated his professional relationship with T.W. and C.R., his patients, to induce or engage them in sexual activity. He exploited their trust and abused his position for his own sexual arousal or gratification. The vulnerability of his patients, especially when they were alone and in a state of undress for the receipt of acupuncture treatments, made Mr. Nath’s actions particularly heinous and dangerous.
9. As exemplified by the facts of this case, acupuncture physicians often care for their patients in settings where they can easily abuse these patients. Due to the potential for abuse that is inherent under these circumstances, acupuncture physicians must possess good judgment and good moral character in order to safely practice acupuncture. Mr. Nath’s willingness to commit sexual misconduct toward his patients demonstrates a serious defect in Mr. Nath’s judgment and character. Mr. Nath’s egregious conduct demonstrates such a disregard for the laws and regulations governing acupuncturists in this state that the safety of his patients cannot be assured as long as he continues to practice acupuncture in the State of Florida.
10.Mr. Nath’s lack of good judgment and moral character and his disregard for the laws and rules governing the practice of acupuncture in the State of Florida represent a significant likelihood that Mr. Nath will cause harm to patients in the future. This probability constitutes an immediate serious danger to the health, safety, and welfare of the citizens of the State of Florida. Nothing short of an immediate suspension of Mr. Nath’s license to practice acupuncture will ensure the protection of the public from this danger.
For these reasons, the Department suspended Nath’s acupuncture license pending full administrative disciplinary proceedings during which Nath will have the opportunity to challenge the allegations of misconduct.
Section 120.60(6), Florida Statutes (2012), authorizes emergency disciplinary action under the following circumstances:
If the agency finds that immediate serious danger to the public health, safety, or welfare requires emergency suspension, restriction, or limitation of a license, the agency may take such action by any procedure that is fair under the circumstances if:
(a) The procedure provides at least the same procedural protection as is given by other statutes, the State Constitution, or the United States Constitution;
(b) The agency takes only that action necessary to protect the public interest under the emergency procedure; and
(c) The agency states in writing at the time of, or prior to, its action the specific facts and reasons for finding an immediate danger to the public health, safety, or welfare and its reasons for concluding that the procedure used is fair under the circumstances.
*1276 In addition to alleging an “immediate serious danger,” courts require the factual allegations of an ESO to demonstrate that: “(1) the complained of conduct is likely to continue; (2) the order is necessary to stop the emergency;, and (3) the order is sufficiently narrowly tailored to be fair.” Kaplan v. Dep’t of Health, 45 So.3d 19, 21 (Fla. 1st DCA 2010); see also Bio-Med Plus, Inc. v. Dep’t of Health, 915 So.2d 669, 672 (Fla. 1st DCA 2005). When evaluating the sufficiency of an ESO, an appellate court is limited to examining the face of the order itself to determine if the elements were alleged with sufficient detail. See Mendelsohn v. Dep’t of Health, 68 So.3d 965, 967 (Fla. 1st DCA 2011); Kaplan, 45 So.3d at 20.
We conclude that this ESO satisfies the requirements of section 120.60(6) and case law, except for the requirement that it be narrowly tailored to take only such action as is necessary to protect the public. The summary procedure authorized by statute permits the Department to deprive licensees of a property interest prior to giving them full due process. Bearing that in mind, we have held that agencies employing the procedure must “explain why less harsh remedies ... would have been insufficient to stop the harm alleged.” Preferred RV, Inc. v. Dep’t of Highway Safety & Motor Vehicles, 869 So.2d 713, 714 (Fla. 1st DCA 2004). The ESO at issue here concludes that nothing short of outright suspension of Nath’s license would suffice to stop further sexual misconduct directed to female patients, but it does not explain why that is so. Nath’s alleged misconduct involved two female patients. Although we do not disagree that such behavior evinces defective judgment and disregard for the laws governing the practice of acupuncture, the Department does not explain why emergency license suspension is the only way to protect Nath’s current and potential patients pending the outcome of the disciplinary proceedings. In defense of its action, the Department claims that simply restricting Nath’s practice in some way-say, temporarily limiting him to seeing only male patients — would be difficult to monitor. We are not persuaded that such difficulty satisfies the requirements of section 120.60(6), and in any event, the ESO itself does not explain why restrictions would be inadequate to address the harm alleged. See Witmer v. Dep’t of Bus. & Prof'l Reg., 631 So.2d 338, 341 (Fla. 4th DCA 1994) (stating that “every element necessary to [the emergency suspension order’s] validity must appear on the face of the order.”).
Accordingly, we grant Nath’s petition for review in part, quash the ESO only insofar as it suspends Nath’s license to practice acupuncture, and remand to the Department for further proceedings consistent with this opinion. See Cunningham v. Agency for Health Care Admin., 677 So.2d 61, 62 (Fla. 1st DCA 1996).
DAVIS and CLARK, JJ., concur.

. See § 120.68(1), Fla. Stat. (2012); Fla. R. App. P. 9.100.