VAN NORTWICK.
Pursuant to section 120.68, Florida Statutes (2013), Dr. Raymond Failer, D.O., petitions for judicial review of the emergency suspension order (ESO) entered by the Department of Health (the Department), suspending Dr. Failer’s license to practice osteopathic medicine. Petitioner argues that the Department has failed to rule on his request for a formal hearing. For the reasons explained herein, we grant the petition, order the Department to rule on the petitioner’s request for a formal hearing, continue the stay now in effect, and remand for further proceedings.
The ESO alleged that Dr. Failer practiced osteopathic medicine in a pain management clinic in Florida; that he treated multiple patients with very high doses of controlled substance medications with insufficient medical justification; that the Department retained an independent medical expert who reviewed the records for several of Dr. Failer’s patients; and that the expert determined Dr. Failer did not meet the relevant standards of care for the prescription of controlled substances. According to the ESO, the Department conducted a routine inspection of the facility, which included an inspection of patient records. The ESO contained particular findings regarding Dr. Failer’s care and treatment of five patients identified as VR, NJ, CJ, JS, and SY. The ESO noted the varieties of scheduled medications that Dr. Failer prescribed, as well as Dr. Failer’s failure to adequately monitor his patients’ use of the medications in accordance with accepted standards.
As alleged in the ESO, among the medications Dr. Failer prescribed were roxico-done/oxycodone (Schedule II), oxycontin (a delayed release form of oxycodone), dia-zepam/valium (Schedule IV), and endo-cet/percocet (Schedule II). Specifically, the records for NJ and CJ, who are brothers, reveal that, while under Dr. Failer’s care, NJ tested positive for elevated levels of amphetamine and CJ tested positive for cocaine, amphetamine, and ecstasy. In the ESO, the Department asserts that Dr. Failer never reduced the scheduled medications he was prescribing them, never checked with the Prescription Drug Monitoring Program to determine if they were potentially diverting their medications, and never referred NJ or CJ to substance abuse services.
The ESO included the Department’s expert’s opinion that the types and amounts of medications prescribed, combined with a lack of inquiry into the patients’ medical histories or what medications they could have been taking as prescribed by their *361 other physicians, placed each patient at an elevated risk of overdose. Additionally, the ESO alleges that SYs records stated that Dr. Failer noted SY was exhibiting withdrawal symptoms and should be prescribed suboxone instead of oxycodone. The records indicate, however, that Dr. Failer continued to prescribe oxycodone for SY.
The ESO further alleged that there was no record of Dr. Failer performing a physical examination on these patients upon their initial visits or at any of their follow up visits. The ESO found that Dr. Failer never prescribed alternative treatments, such as physical therapy, for the patients’ conditions, choosing instead to rely solely on high doses of opioids.
Based on the individualized findings of fact as to each patient, the ESO found that Dr. Failer’s failure to perform basic functions required of all physicians evidences a pattern and propensity to practice below the minimum acceptable standard of care, which puts all of his current and future patients at risk of harm; consequently, restricting his ability to prescribe scheduled controlled substances would not adequately protect the public health, safety, or welfare. The ESO concluded that the facts demonstrated Dr. Failer’s conduct violated various portions of sections 459.015(1)(t), (x), (pp), Florida Statutes (2013), and Rule 64B15-14.005, Florida Administrative Code. Under section 120.60(6), Florida Statutes (2018), Dr. Fail-er’s license was immediately suspended and a proceeding seeking formal discipline against Dr. Failer’s license was pledged to be promptly instituted.
On November 27, 2013, the Department filed an administrative complaint against Dr. Failer, based on the asserted violations originally submitted in the ESO. On December 11, 2013, Dr. Failer disputed the allegations of fact contained in the administrative complaint and petitioned for a formal hearing before an administrative law judge pursuant to sections 120.569(2)(a) and 120.57(1).
Dr. Failer filed the instant petition for review, and contemporaneously filed a motion for stay of the ESO, subject to the suspension of his ability to prescribe controlled substances pending a formal hearing and final order. The Department filed a response to the motion for stay, arguing that the danger posed by Dr. Failer’s continued practice went beyond the over-prescription of scheduled controlled substances because Dr. Failer violated the standard of care in several important respects that had nothing to do with the prescription of medications. A separate panel of this court granted the motion for stay pending further action of the court or final disposition of Dr. Failer’s petition, subject to the Department’s reasonable restrictions on Dr. Failer’s ability to prescribe controlled substances.
The Department may issue an emergency suspension of a party’s license if the agency determines such action is required due to an “immediate serious danger to the public health, safety, or welfare,” if, in taking emergency action, the Department employs a procedure that:
(a) ... provides at least the same procedural protection as is given by other statutes, the State Constitution, or the United States Constitution;
(b) The agency takes only that action necessary to protect the public interest under the emergency procedure; and
(c) The agency states in writing at the time of, or prior to, its action the specific facts and reasons for finding an immediate danger to the public health, safety, or welfare and its reasons for concluding that the procedure used is fair under the circumstances. The agency’s findings of *362 immediate danger, necessity, and procedural fairness are judicially renewable. Summary suspension, restriction, or limitation may be ordered, but a suspension or revocation proceeding pursuant to ss. 120.569 and 120.57 shall also be promptly instituted and acted upon.
§ 120.60(6), Fla. Stat. (2013). Additionally, the factual allegations in an emergency suspension order must demonstrate that “(1) the complained of conduct is likely to continue; (2) the order is necessary to stop the emergency; and (3) the order is sufficiently narrowly tailored to be fair.” Nath v. State Dept. of Health, 100 So.3d 1273, 1276 (Fla. 1st DCA 2012) (quoting Kaplan v. Dep’t. of Health, 45 So.3d 19, 21 (Fla. 1st DCA 2010)). Furthermore, “[w]hen evaluating the sufficiency of an ESO, an appellate court is limited to examining the face of the order itself to determine if the elements were alleged with sufficient detail.” Id.
When the agency action for which a party petitions the court for judicial review involves the suspension of a license, “su-persedeas shall be granted as a matter of right upon such conditions as are reasonable, unless the court, upon petition of the agency, determines that a supersedeas would constitute a probable danger to the health, safety, or welfare of the state.” § 120.68(3), Fla. Stat. (2013). Section 120.57(1) controls proceedings involving a disputed issue of material fact, unless all parties waive application of section 120.57(1). § 120.569(1), Fla. Stat. (2013).
If an agency receives a request for hearing, it must grant or deny the request within 15 days of receiving the request. § 120.569(2)(a), Fla. Stat. (2013); see also Simmons v. State, Agency for Health Care Admin., 950 So.2d 431, 432 (Fla. 1st DCA 2007) (“An agency is not entitled to ignore a properly filed request for hearing, and if it determines that the petitioner is not entitled to a hearing, it is obligated to issue an order to that effect.”); Salam v. Bd. of Prof'l Eng’rs, 946 So.2d 48, 49 (Fla. 1st DCA 2006) (granting petition for writ of mandamus and instructing agency to rule on Salam’s petition for formal hearing within 15 days). After reviewing an agency’s action, this court may order the agency to perform an action required by law or remand a matter for additional agency proceedings. § 120.68(6)(a)1., Fla. Stat. (2013).
In his petition for judicial review, Dr. Failer requests two forms of relief. First, he requests that this court order the Department to follow the pertinent statutory procedures so that he receives a hearing on the action taken against his medical license. Dr. Failer is clearly entitled to a section 120.569 or 120.57 hearing on the Department’s suspension of his license, pursuant to the plain language of section 120.60(6)(c). Moreover, the record reflects that Dr. Failer timely filed a request for a formal hearing in regards to the administrative complaint the Department filed against him. By statute and case law, the Department was required to either grant or deny Dr. Failer’s request within 15 days of receipt, which would have been December 26, 2013. See Fla. R. Jud. Admin. 2.514(a)(1). The record does not indicate that the Department has taken any action on Dr. Failer’s request for formal hearing within the time in which it was obligated to act. The Department shall promptly rule on Dr. Failer’s request for a formal hearing.
Second, Dr. Failer requests this court to continue the stay of the ESO, subject to a reasonable restriction on his ability to prescribe controlled substance medications. While the Department offers particularized facts in support of its contention that Dr. Failer fell below the minimum standard of care in treating his patients in several respects, assuming the factual allegations contained in the ESO *363 are true, the danger to the public from Dr. Failer’s continued practice is related to his right to prescribe scheduled medications.. For example, Dr. Failer’s neglect in obtaining prior medical records or coordinating with the patients’ other prescribers is dangerous because the drugs Dr. Failer prescribed may have negatively interacted with the patients’ other medications or treatments. Likewise, the patients’ heightened risk of overdose, Dr. Failer’s failure to properly monitor that the patients were taking the medications he prescribed as ordered and not diverting the medicine, his failure to prescribe other treatment modalities, and his treatment of vaguely diagnosed maladies with high-powered controlled substances are possible only so long as Dr. Failer has the ability to prescribe those types of medications.
Removing Dr. Failer’s authority to prescribe scheduled medications would remove the danger to the public health, safety, and welfare. Compare Nath, 100 So.3d at 1276 (quashing in part the Department’s emergency suspension order where order failed to sufficiently explain why restricting petitioner’s license would not adequately address the harm alleged); cf. Cocores v. State, Dep’t of Health, 111 So.3d 971, 972 (Fla. 1st DCA 2013) (denying petitioner’s motion for stay of order suspending his medical license on an emergency basis where he prescribed controlled substance medications to an undercover officer posing as a patient without performing a physical examination, drug screen, or reviewing prior medical records, and made several statements to the undercover officer evincing a disregard for the legal requirements attendant to prescribing such medications). While Dr. Failer may be deficient in other, non-medication related aspects of his practice, the Department has not explained why removing Dr. Fail-er’s right to prescribe the medications in question would not sufficiently protect current and potential patients from the primary harm posed by Dr. Failer pending the resolution of disciplinary proceedings. See Nath, 100 So.3d at 1276 (“Although we do not disagree that such behavior evinces defective judgment and disregard for the laws governing the practice of acupuncture, the Department does not explain why emergency license suspension is the only way to protect Nath’s current and potential patients pending the outcome of the disciplinary proceedings.”). In light of the presumption that supersedeas will be granted as of right in these circumstances, we continue the existing stay, subject to the Department placing reasonable restrictions on Dr. Failer’s ability to prescribe scheduled controlled substances pending a formal hearing and final order. See § 120.68(3).
Accordingly, we grant the relief requested, order the Department to rule on the request for a formal hearing within 15 days from the date of the issuance of the mandate in this proceeding, and continue the existing stay in effect.
WOLF, J., concurs, and MARSTILLER, J., concurs specially with opinion.