# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

————————————————

No. 1D17-4174

————————————————

GERARD KRUSE,

Petitioner,

v.

STATE OF FLORIDA, DEPARTMENT
OF HEALTH IN RE: THE
EMERGENCY RESTRICTION OF
THE LICENSE OF GERARD KRUSE,
L.C.S.W.,

Respondent.

————————————————

A Petition to Review Non-Final Agency Action—Original
Jurisdiction.

April 16, 2019

WOLF, J.

The issue before this court is whether an act of sexual
misconduct by a psychotherapist against a patient during a session
may support an emergency restriction on his license that prevents
him from treating patients of the opposite sex. Petitioner argues
there are insufficient allegations that the conduct would recur.[*]
We disagree. The allegations contained in the emergency order are

————————————

[*] Petitioner raises a second issue. We deny relief on this issue
without further comment.

sufficient. The egregious, forceful, and intentional course of sexual misconduct in this case and the potential danger to the public that it presents supports the restrictions placed on petitioner's license.

EMERGENCY ORDER

Petitioner, Gerald Kruse, attempts to argue that this was a single act of insufficient seriousness to support the restriction on his license. The facts and conclusions laid out in the Order of Emergency Restriction of License issued by the Department of Health belie this assertion. In pertinent part the order states:

3. At all times material to this order, Mr. Kruse worked as a clinical social worker . . . .

4. On June 23, 2017, Patient L.P., a 27-year-old female, presented to Mr. Kruse for psychotherapy services.

5. Mr. Kruse introduced himself to Patient L.P. as "Dr. G." Patient L.P. assumed that Mr. Kruse was a doctor and believed that she could trust him based on his credentials.

6. During the June 23, 2017, appointment Patient L.P. informed Mr. Kruse that she had a history of anxiety and post-traumatic stress. Patient L.P. informed Mr. Kruse that her post-traumatic stress was caused by her history of being sexually abused and a recent violent sexual attack.

7. Mr. Kruse knew that Patient L.P. was especially vulnerable.

8. Patient L.P. observed that Mr. Kruse was flirtatious with her during the June 23, 2017, appointment.

9. Patient L.P. continued to go to Mr. Kruse for psychotherapy services on July 6, 2017, and July 19, 2017.

10. During these appointments, Mr. Kruse shared personal stories with Patient L.P. that were sexual in

2

nature. Mr. Kruse told Patient L.P. about his current life stressors and occasionally cried while he shared his stories with Patient L.P.

11. During their appointments, Mr. Kruse asked to see pictures of Patient L.P. When Patient L.P. showed Mr. Kruse pictures of herself, Mr. Kruse told Patient L.P. that he thought she was attractive.

12. On July 19, 2017, Patient L.P. informed Mr. Kruse that she was going to begin therapy sessions with another therapist.

13. Mr. Kruse repeatedly told Patient L.P. that he was going to miss her.

14. When Patient L.P. attempted to open the door to leave, Mr. Kruse grabbed Patient L.P.'s buttocks.

15. Patient L.P. slapped Mr. Kruse's hand and said "what the f[---], I'm married."

16. Mr. Kruse apologized and told Patient L.P. that he just found her "really attractive."

17. Patient L.P. attempted to open the door to leave again and Mr. Kruse grabbed Patient L.P.'s arm, pulled her close to him, and attempted to kiss her.

18. Patient L.P. rebuffed his advance and pushed him away. Patient L.P. reiterated that she was married.

19. Mr. Kruse told Patient L.P. that he thought she was attractive.

The order then makes the following important observations:

20. Clinical social workers hold a position of power in the psychotherapist-patient relationship. Society entrusts clinical social workers to help vulnerable people in need of guidance. Mr. Kruse violated the psychotherapist-patient relationship when he discussed his personal life with Patient L.P. and then attempted to engage Patient

3

L.P. in sexual activity. *Mr. Kruse knew that Patient L.P. was vulnerable, suffered from post-traumatic stress caused by sexual violence, and was in need of guidance and support, and still violated the psychotherapist-patient relationship by attempting to engage Patient L.P. in sexual activity.*

21. Mr. Kruse's actions and disregard for the health of Patient L.P. show that he does not have the judgment or moral character to hold a position of power and trust. *Mr. Kruse's blatant disregard for the laws and rules regulating his profession indicates that this behavior is likely to continue.* Because of this risk, Mr. Kruse's continued unrestricted practice represents an immediate, serious danger to the public health and to patients under his care. Therefore, there are no less restrictive means than the terms outlined in this Order that will adequately protect the public.

(Emphasis added).

In its conclusions of law, the Department recognized the seriousness with which the Legislature and the Department view this type of misconduct:

2. Section 491.009(1)(k), Florida Statutes (2016-2017), subjects a clinical social worker to discipline, including restriction, for committing any act upon a patient or client which would constitute sexual battery or which would constitute *sexual misconduct* as defined pursuant to Section 491.0111, Florida Statutes (2016-2017).

3. Section 491.0111, Florida Statutes (2015-2017) provides that sexual misconduct shall be defined by board rule.

4. Rule 64B4-10.002(1), Florida Administrative Code, provides that it is sexual misconduct for a psychotherapist to engage, attempt to engage, or offer to engage a client in sexual behavior, or any behavior, whether verbal or physical, which is intended to be sexually arousing, including kissing; sexual intercourse,

4

either genital or anal; cunnilingus; fellatio; or the touching by either the psychotherapist or the client or the other's breasts, genital areas, *buttocks*, or thighs, whether clothed or unclothed.

5. Mr. Kruse violated Section 491.0111, Florida Statutes (2016-2017), and Rule 64B4-10.002(1), Florida Administrative Code, by engaging, attempting to engage, or offering to engage, Patient L.P. in sexual misconduct by:

    a. Touching Patient L.P.'s buttocks;

    b. Attempting to kiss Patient L.P.; and

    c. Telling Patient L.P. that she was attractive.

6. Section 120.60(6), Florida Statutes (2017), authorizes the State Surgeon General to restrict a clinical social worker's license upon a finding that the clinical social worker presents an immediate, serious danger to the public health, safety, or welfare.

(Emphasis added).

## ANALYSIS

Section 120.60(6) authorizes a state agency to take emergency disciplinary action against a state licensee under the following circumstances:

If the agency finds that immediate serious danger to the public health, safety, or welfare requires emergency suspension, restriction, or limitation of a license, the agency may take such action by any procedure that is fair under the circumstances if:

(a) The procedure provides at least the same procedural protection as is given by other statutes, the State Constitution, or the United States Constitution;

5

(b) The agency takes only that action necessary to protect the public interest under the emergency procedure; and

(c) The agency states in writing at the time of, or prior to, its action the specific facts and reasons for finding an immediate danger to the public health, safety, or welfare and its reasons for concluding that the procedure used is fair under the circumstances. The agency's findings of immediate danger, necessity, and procedural fairness are judicially reviewable.

A number of cases have discussed the application of these standards in terms of sexual misconduct by a licensee. In *Field v. State Department of Health*, 902 So. 2d 893 (Fla. 1st DCA 2005), we held an emergency order suspending a doctor's medical license based on a single allegation of sexual misconduct sufficiently demonstrated the doctor's continued medical practice would pose an immediate and serious danger to public health, safety, and welfare.

*Field* cited with approval the following language from the emergency order in that case, which similar to the order here, emphasized the vulnerability of patients during treatment:

As exemplified by the facts of this case, physicians often care for vulnerable patients in settings where they can easily abuse these patients. Due to the potential for abuse that is inherent under these circumstances, doctors must possess good judgment and good moral character in order to safely practice medicine. Dr. Field's willingness to engage in sexual misconduct toward his patient demonstrates a serious defect in Dr. Field's judgment and moral character.

*Id.* at 896.

We specifically recognized the necessity to provide heightened protection for vulnerable patients from sexual misconduct. The

need for heightened scrutiny over caregivers in incidents involving vulnerable patients is paramount.

Petitioner attempts to distinguish *Field* on two grounds: (1) that the conduct involved in *Field* was more serious; and (2) Dr. Field admitted the sexual conduct, although he claimed it was consensual. These distinctions are unavailing.

The Legislature specifically authorized action against a social worker's conduct not only for sexual battery but also for sexual misconduct. § 491.009(1)(k), Fla. Stat. By rule, the conduct involved in this case meets the definition of sexual misconduct. Fla. Admin. Code R. 64B4-10.002(1).

Further, conduct of this type is egregious, especially with a victim who had previously been assaulted and was vulnerable. We refuse to distinguish *Field* based on the level of seriousness.

The fact that Dr. Field admitted his conduct is also not an important distinction. In ruling on the legitimacy of an emergency order, it is not our job to determine the credibility of witnesses but to determine the sufficiency of the facts as alleged in the emergency order. *Sanchez v. Dep't of Health,* 225 So. 3d 964, 966 (Fla. 1st DCA 2017). When evaluating the sufficiency of an emergency suspension order, an appellate court is limited to examining the face of the order itself to determine if the elements were alleged with sufficient detail. *See Mendelsohn v. Dep't of Health,* 68 So. 3d 965, 967 (Fla. 1st DCA 2011); *Kaplan v. State, Dep't of Health,* 45 So. 3d 19, 20 (Fla. 1st DCA 2010).

Petitioner's attempt to distinguish this case from *Field* must fail, because his dispute of the allegations requires a credibility determination. This need for a credibility determination is particularly applicable in cases of alleged sexual misconduct, which often involve a one-on-one encounter. Credibility determinations must be made during a full expedited evidentiary administrative proceeding.

In the instant case, there are detailed facts set out in the emergency suspension order based on the testimony of the person making the allegations of sexual misconduct, which occurred over

7

the course of several appointments. These allegations are clearly sufficient.

Further, the emergency order here is narrowly tailored by restricting only petitioner's ability to see female patients. In a similar case, *Sanchez*, 225 So. 3d at 966-67, we denied a challenge to an emergency order restricting a dental hygienist's ability to see female patients after allegations he committed sexual conduct against female patients, explaining:

> Because his alleged misconduct is readily concealable in the course of carrying out his duties, we cannot fault the Department's tailored, gender-specific restriction and conclusion that "[n]othing short of the immediate restriction of Mr. Sanchez's license to practice as a dental hygienist in the State of Florida will protect the public from the dangers created by Mr. Sanchez's continued practice of dental hygiene on female patients."

*Cf. Nath v. Dep't of Health*, 100 So. 3d 1273 (Fla. 1st DCA 2012) (holding emergency order suspending an acupuncturist's license after allegations of sexual misconduct against female patients sufficiently alleged an immediate serious danger to the public that was likely to recur absent an emergency order, but the order could have been more narrowly tailored by only restricting the treatment of female patients).

Similarly here, petitioner's misconduct is readily concealable, as evidenced by allegations that he forcibly grabbed and kissed the patient while alone with her during treatment after she tried to leave. As in *Sanchez*, the Department's narrowly tailored order restricting his ability to see female patients is necessary to protect the public.

We therefore DENY the petition to review non-final agency action.

OSTERHAUS and WINSOR, JJ., concur.

_____

*Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.*

_____


Cynthia A. Mikos and Jamie A. Klapholz of Johnson, Pope, Bokor, Ruppel, & Burns, LLP, Tampa, for Petitioner.

Christine E. Lamia, Chief Appellate Counsel, and Katelyn R. Levine, Assistant General Counsel, Florida Department of Health, Prosecution Services Unit, Tallahassee, for Respondent.