# Third District Court of Appeal
## State of Florida

Opinion filed February 17, 2021.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D20-1646
Lower Tribunal Nos. 2020-30488, DOH-20-1628-ERO-MQA
_____

## Stephanie Stover, M.D.,
Petitioner,

vs.

## State of Florida, Department of Health,
Respondent.


A Case of Original Jurisdiction – Petition for Review of Non-Final Agency Action.

Metzger & Associates, LLC, and Kenneth J. Metzger (Tallahassee); Ellsworth Law Firm, P.A., and Sean M. Ellsworth, for petitioner.

Sarah Young Hodges (Tallahassee), Chief Appellate Counsel, for respondent.


Before LOGUE, LINDSEY and LOBREE, JJ.

LOGUE, J.

Dr. Stephanie Stover petitions for review of an emergency order issued by the Florida Department of Health restricting her ability to conduct certain surgeries pending the outcome of an administrative proceeding in which the Department contends Dr. Stover committed malpractice. Because the Department's emergency order fails to include sufficient facts that would allow this Court to engage in a meaningful review to determine whether the restriction is narrowly tailored and whether other remedies would be insufficient to protect the public, we grant the petition and quash the order.

**BACKGROUND**

Dr. Stover performs elective cosmetic and plastic surgery procedures, including liposuction and gluteal fat transfer and grafting, commonly advertised as a Brazilian Butt Lift. This procedure typically involves the removal of fat by liposuction from an area such as a patient's abdomen and the insertion of the fat into the patient's buttocks, or gluteal area.

In June 2019, the Florida Board of Medicine issued an emergency rule that prohibited physicians from injecting fat into the intramuscular or submuscular region of a patient's gluteal area during a gluteal fat grafting procedure. This emergency rule was formally adopted by the Board and

became effective on March 2, 2020. See Rule 64B8-9.009(2)(f), Fla. Admin. Code.[1]

On September 15, 2020, Dr. Stover performed various surgical procedures on a patient, including breast augmentation, abdominoplasty, liposuction, and gluteal fat transfer and grafting. After the procedure, the patient's heart rate drastically dropped and she stopped breathing. Emergency medical services transferred the patient to the hospital where she was later pronounced dead. After conducting an autopsy of the deceased patient, a medical examiner observed "multiple fatty particles . . . within and beneath [the patient]'s gluteus maximum muscles," along with "numerous channels" through the patient's "gluteal muscles containing fatty particles." The medical examiner determined the patient had died from pulmonary embolisms.

An independent expert reviewed the autopsy results and opined that (1) Dr. Stover "improperly injected fat into [the patient]'s gluteal muscle"; (2) "based on the number of channels through [the patient]'s gluteal muscles and the amount of fat in and under her muscles, Dr. Stover's conduct was

---

[1] The administrative rule, titled "Standard of Care for Gluteal Fat Grafting," provides: "When performing gluteal fat grafting procedures, fat may only be injected into the subcutaneous space and must never cross the gluteal fascia. Intramuscular or submuscular fat injections are prohibited."

3

either intentional or recklessly negligent"; and (3) "Dr. Stover's conduct of inserting fat in and below [the patient]'s gluteal muscles fell below the prevailing minimum standard of care for gluteal fat transfer procedures."

Based on this conduct, the Department asserted:

25.     . . . Dr. Stover's conduct of using an inherently dangerous and illegal fat grafting technique despite the known risks of increased mortality indicates that Dr. Stover is not capable of performing surgeries in a manner that is correct and safe. The number of channels through [the patient]'s gluteal muscle indicates that Dr. Stover's conduct was either intentional or reckless. Therefore, Dr. Stover's continued unrestricted practice as a medical doctor presents an immediate, serious danger to the health, welfare, and safety of the public.

26.     An independent medical expert has determined that Dr. Stover's conduct fell below the prevailing minimum standard of care. As a result of Dr. Stover's failure to operate in a manner that is correct and safe, [the patient] died. Because Dr. Stover ignored the Board of Medicine's rule prohibiting physicians from injecting fat into patients' muscles, there is a significant likelihood that Dr. Stover's utilization of improper and dangerous techniques will continue. This constitutes an immediate, serious danger to the public health, safety, and welfare. As a result, there are no less restrictive means, other than the terms of this Order, that will adequately protect the public from Dr. Stover's continued unrestricted practice as a medical doctor.

On October 23, 2020, the Department issued the emergency order under review precluding Dr. Stover from performing any procedure involving fat transfer or fat grafting pending a full administrative hearing on the matter.

4

Two weeks later, on November 6, 2020, the Department filed an administrative complaint against Dr. Stover based on the same incident alleging medical malpractice and violation of Rule 64B8-9.009(2)(f).[2]

**DISCUSSION**

Section 120.60(6) delineates the Department's authority to take emergency disciplinary action against a state licensee under the following circumstances:

> If the agency finds that immediate serious danger to the public health, safety, or welfare requires emergency suspension, restriction, or limitation of a license, the agency may take such action by any procedure that is fair under the circumstances if:
>
> (a)    The procedure provides at least the same procedural protection as is given by other statutes, the State Constitution, or the United States Constitution;
>
> (b)    The agency takes only that action necessary to protect the public interest under the emergency procedure; and
>
> (c)    The agency states in writing at the time of, or prior to, its action the specific facts and reasons for finding an immediate danger to the public health, safety, or welfare and its reasons for concluding that the procedure used is fair under the circumstances. The agency's findings of immediate danger, necessity, and procedural fairness are judicially reviewable. Summary suspension, restriction, or limitation may be ordered,

---

[2] In its administrative complaint, the Department sought imposition of one or more of the following penalties: permanent revocation or suspension of Dr. Stover's license, restriction of practice, imposition of an administrative fine, issuance of a reprimand, placement of Dr. Stover on probation, corrective action, refund of fees billed or collected, remedial education and/or any other relief that the Board deems appropriate.

but a suspension or revocation proceeding pursuant to ss. 120.569 and 120.57 shall also be promptly instituted and acted upon.

Significantly, in authorizing the Department to issue such orders prior to any hearing, the Legislature provided that such emergency orders are immediately reviewable when the licensee files a petition for review of nonfinal agency action in the appropriate district court. See §§ 120.60(6)(c), 120.68(1)–(2), Fla. Stat. (2020); Fla. R. App. P. 9.100(c)(3).

Our review of the Department's emergency order "is limited to the four corners of the order itself, and every element necessary to its validity must appear on the face of the order." Valls v. Dep't of Health, 255 So. 3d 515, 517 (Fla. 3d DCA 2018); see also Lohstreter v. Dep't of Health, 298 So. 3d 1290, 1290 (Fla. 1st DCA 2020).

To satisfy the demanding standards of section 120.60(6), the factual allegations in the order must show "(1) the complained of conduct is likely to continue; (2) the order is necessary to stop the emergency; and (3) the order is sufficiently narrowly tailored to be fair." Id. at 1291. Further, the "agency's stated reasons for acting cannot be general or conclusory, but must be factually explicit and persuasive concerning the existence of a genuine emergency." Id. at 1290 (internal quotations and citation omitted). Among other things, the Legislature required that the Department's order disclose

6

"its reasons for concluding that the procedure used is fair under the circumstances." § 120.60(6)(c), Fla. Stat. These statutory safeguards ensure a proper balance between protecting the public from harm and preserving licensees' "property interest prior to giving them full due process." Nath v. State Dep't of Health, 100 So. 3d 1273, 1276 (Fla. 1st DCA 2012).

The Department's order alleged that Dr. Stover had violated section 458.331(1)(t), Florida Statutes, and Rule 64B8-9.009(2)(f), Florida Administrative Code, by "performing intramuscular and submuscular fat injections" during the gluteal fat transfer and fat grafting procedure on her patient. The emergency order sets forth detailed and specific allegations regarding Dr. Stover's actions during a surgical procedure in which her patient died. Dr. Stover's actions were found to be either intentional or reckless, and contrary to the standard of care for gluteal fat grafting procedures established by the Board of Medicine.

The Department's order recites sufficiently detailed factual allegations "of the time, place, particular acts, and circumstances demonstrating an immediate serious danger to the public health, safety, or welfare requiring emergency action" upon Dr. Stover's license. Lohstreter, 298 So. 3d at 1291. The emergency order, however, fails to provide a sufficient factual foundation to determine whether the restriction imposed is sufficiently

7

narrowly tailored to be fair under the circumstances. Id. at 1291 ("Because the summary emergency procedure allows the Department to 'deprive licensees of a property interest prior to giving them full due process,' the emergency . . . order must 'explain why less harsh remedies . . . would have been insufficient to stop the harm alleged." (quoting Nath, 100 So. 3d at 1276)). The Department must provide this factual foundation precisely because our review is limited to the four corners of the order. The Court is therefore dependent on the Department's sharing of its medical expertise to ensure the review is meaningful and not simply a rubber stamp.

Here, the mortality at issue occurred during the substantial fat transfers involved in a Brazilian Butt Lift; it involved an alleged violation of the Department's emergency rule intended to limit the dangers of fat transfers during such procedures. The emergency order restricting Dr. Stover's practice, however, prohibited her from performing any procedure involving fat transfer or fat grafting. Fat transfers are used in many types of cosmetic surgeries performed in different parts of the body including the earlobes, nose, cheeks, chin, hands, arms, and breasts.[3] The Department's order fails

---

[3] See, e.g., Bahnyuk v. Reed, 174 A.D. 3d 481, 482 (N.Y. App. Div. 2019) (plastic surgeon "performed fat transfers to areas of plaintiff's face during an elective cosmetic procedure"); Sensini v. MTD Sw. Inc., 2018 WL 8224882 (M.D. Fla. 2018) (patient had fat transferred from her abdomen to her genital area to correct lacerations after an accident); Anderson v. Bd. of Supervisors

to provide the medical background to allow this Court to review whether the risks of fat transfer performed in these smaller surgeries are sufficiently similar to the risks of fat transfer performed during larger surgeries, such as the Brazilian Butt Lift at issue, to justify the across-the-board restriction upon Dr. Stover's license precluding her from performing any type of fat transfer. Indeed, while the emergency order clearly provides the findings necessary to preclude Dr. Stover from performing Brazilian Butt Lifts pending the final hearing, the order contains no discussion why Dr. Stover should also be precluded from performing operations involving smaller fat transfers.

## CONCLUSION

Because we are restricted to the four corners of the Department's order and the order does not contain sufficient factual context to allow meaningful review of whether the restriction imposed is sufficiently narrowly tailored to be fair under the circumstances, Lohstreter, 298 So. 3d at 1291, we grant the petition, quash the order under review, and remand for further proceedings consistent with this opinion.

Petition granted; Order quashed.

---

of La. State Univ. & Agric. & Mech. Coll., 943 So. 2d 1198, 1199 (La. Ct. App. 2006) (doctors performed a "coronal forehead lift and a fat transfer to the upper and lower lips" on patient).

9